## ADDISON vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Defendant in criminal trial; when can not call for all of conversation testified to by State's witness.*—Where a witness for the State, on cross-examination, states that he had a conversation with the defendant, before the offense is alleged to have been committed, and also states what he, the witness, said to the defendant,—this does not entitle the defendant to have all that was said, in such conversation, disclosed by the witness as evidence in his behalf.

2. *Leading question; permitting or refusing to be asked, not revisable on error.* Leading questions rest in the sound discretion of the court, and the ruling of the court, in either permitting or refusing to permit such questions to be asked, can not be assigned for error.

3. *Witness, mode of impeaching; what charge as to, erroneous.*—Where a witness is impeached, either by calling witnesses to depose to his general bad character, or by contradicting him, as to some statement alleged to have been made by him out of court, which he denies on his examination in court,—it is an error in the court to charge the jury to *throw aside* the testimony of such witness, and not to consider it, except in so far as it may be sustained or corroborated by other testimony in the cause.

4. *Same; true rule as to impeachment of witness.*—The true rule in such cases, is not to throw aside the evidence of a witness thus impeached, but to submit all that may be said by or for him, and all that is said against him, to the jury, to give to both such weight and credit as justice, in the particular case, may seem to demand.

APPEAL from the Circuit Court of Russell.
Tried before Hon. LITTLEBERRY STRANGE.

The appellant, Jake Addison, was indicted for the murder of Wesley Joseph, found guilty of murder in the second degree, and sentenced to the penitentiary for ten years.

The prisoner and deceased resided on the same plantation in Russell county, the cabin in which the prisoner and his wife lived being not far from the house in which deceased lived. A public road ran in front of both cabins, and not far from them. Several witnesses were introduced by the State, who testified that, being aroused by the firing

and hearing voices, on the night when the killing occurred, they went in the direction of the noise, and found the deceased, with four buckshot wounds in the bowels, lying with his feet towards the prisoner, not far from the public road, and between the two cabins. The prisoner was standing close by, ramming his gun, both barrels of which had been discharged, and cursing loudly. All the State's witnesses testified that they heard the two shots fired, and one of the witnesses that he saw the prisoner when he fired the first time. Among the witnesses introduced by the State was one J. T. Smith, who testified, that on being waked by the firing, he heard a voice, which he recognized as that of the deceased, cry out " oh Lord," and heard another voice, which he recognized as that of the prisoner, say " damn you! I told you I intended to kill you;" that shortly after this he heard a second shot fired, and went to Jake Addison's house. When witness got to the house, the prisoner was standing in front of it with a double-barreled gun, ramming it and cursing. Witness could not remember what prisoner said, except that he stated " that he had been there watching for deceased, and had shot him, but did not know whether he had killed him or not." This was all witness could recollect of what prisoner had said, except that " he was cursing and damning." This witness, on cross-examination by defendant, stated that about three weeks before the killing, he had a conversation with defendant about defendant's wife, the deceased and another person; that witness told defendant "if his wife was such a woman as he stated her to be, he would quit her, and that he further told defendant he did not think he had any ground to quit her." The witness then stated that he could not recite all the conversation unless he was allowed to state what defendant said to him, but that this was all he could remember having said to defendant. Thereupon, the defendant's counsel asked the witness to state all that was said by witness and defendant on that occasion. The State objected to this question, and the court sustained the objection, and would not permit the witness to answer, and the defendant excepted.

The State examined another witness, one Burrel Henry, who testified as to the shooting and the reasons given by the defendant for shooting the deceased. He testified that defendant, among other things, told witness that he had shot deceased because he saw him come out of defendant's house; that deceased "had been there after his wife; that he shot deceased after he came out of his house, because he put his hand behind him, and to his belt." There was no proof that deceased had any weapon about him, and some of the State's witnesses testified that deceased had on no belt when he was shot.

On cross-examination by defendant's counsel, the witness Henry repeated what defendant told him at the time of the killing, and added, that defendant said he had said to deceased, " oh, if' you are for a fight, I'll shoot you." Witness then stated, in answer to defendant's counsel, that this was all defendant had said. Defendant's counsel then asked witness, "did not Jake say in the same connection, and at the same time and place, that he would not have fired had not Wes. put his hand behind him?" This question was objected to on the part of the State, because it was leading. The objection was sustained, and defendant excepted.

After the evidence of the State was closed, the defendant examined "two colored witnesses, named Dennis Jackson and Wilson Dobey." After they were examined, the State introduced several witnesses, to impeach the credit of said Jackson and Dobey, who stated that they knew the general character of said Jackson and Dobey; that it was bad, and that they would not believe them on oath. The bill of exceptions recites, that "one of said impeaching witnesses said, that when it come to that color, he would not like to believe any of them on oath." The credibility of said Dobey was also attacked, by proving that he had made statements to one John D. Quarles, which Dobey denied on his examination.

After all the evidence was closed, the court charged the jury, in substance, as follows: That there were two modes known to the law, by which a witness could be impeached. The first, by calling witnesses to testify to the general bad

character of the witness, and that they would not believe him on oath. That was one way; and "the jury should *throw aside* the testimony of such witness, and not consider it, except in so far as it might be sustained or corroborated by other testimony in the case. The other way was, by asking the witness sought to be impeached, while on the stand, a question material to the issue, and drawing his attention to the time, place and persons who were present, and ask him if he had said a particular thing, and if he denied having said it, by calling the impeaching witness and proving by him that he had said it; and this would have the same effect, as above explained, in the first mode of impeaching." To this part of the charge the defendant excepted.

There were other exceptions reserved to the ruling of the court below, but as they were not considered by the court, it is unnecessary to refer further to them.

HOOPER, for appellant.

JOHN W. A. SANFORD, Attorney-General, *contra*.

PECK, C. J.,—1. The court below rightfully refused to permit the defendant to call out from the State's witness, J. T. Smith, on cross-examination by defendant, all that was said by the witness and defendant at the time of the conversation about which the witness testified.

If said conversation had been called out by the State, the defendant would have been entitled to all that was said at the same time on the same subject; but as the witness had spoken of said conversation on defendant's cross-examination, he could not, thereby, make all that was said evidence in his own behalf. The rule is, if the State examines a witness as to a conversation of the defendant, then the defendant may insist upon having the whole conversation disclosed for the consideration of the jury. This is necessary, that the true meaning and import of the conversation may be rightly understood.—1 Greenl. Ev. § 201.

2. The question put to the witness Burrel Henry was clearly leading. It suggested to the witness the answer

Addison v. The State.

desired. Leading questions are frequently very properly permitted to be put; yet it is a matter resting in the sound discretion of the court, and whether permitted or refused, can not be assigned for error.—1 Greenl. Ev. §§ 434–435; *Donnell v. Jones,* 13 Ala. 490; *Walker et al. v. Dunspaugh,* 20 N. Y. Rep. 170.

3. The court, we think, clearly mistook the law, in its charge as to the mode of impeaching witnesses. I know nothing in the whole law of evidence more unsatisfactory than the two ways mentioned in the charge of impeaching the credibility of witnesses. The first rests upon the mere opinion formed of the character of a witness, by those who reside in the neighborhood, and such opinion rests, not upon any well ascertained facts, but upon what uncertain rumor or prejudice may say of the impeached witness. It is, therefore, unjust both to the party and his impeached witness, altogether, to *throw aside* the evidence of such a witness, and to discredit him, except in so far as he may be sustained and corroborated by the other evidence in the cause.

Justice to both requires that the whole evidence should be left to the consideration of the jury, to determine the force and credit to be given to the impeached and impeaching witnesses.

The other mode of impeaching a witness, by contradicting him as to an alleged statement, made out of court, which he denies on his examination in court, is liable to serious objection. Like the evidence of declarations, when offered against a party, it should be received with great caution. Such evidence is subject to much imperfection and mistake. The party whose declarations are sought to be contradicted, may not have clearly expressed his own meaning, or the witness called to contradict him may have misunderstood him, or by unintentionally adding or omitting a single word, the declaration proved becomes a very different declaration from the one really made by the party who is thus contradicted. We hold the true rule, in such cases, to be, not to *throw aside* the evidence of a witness thus impeached, but to leave all that is said by him, and

against him, to the jury, to give to both such weight and credit as justice, in the particular case, may seem to demand.

For the error in the charge of the court, the judgment is reversed, and the cause is remanded for a new trial, and the defendant will remain in custody until discharged by due course of law.