CHARLES G. COCHRAN

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1898.*

1. CRIMINAL LAW—*pleading—indictment for procuring abortion with instrument must describe manner of its use.* An indictment under section 3 of division 1 of the Criminal Code (Rev. Stat. 1874, p. 352,) for procuring an abortion by means of an instrument the name of which is unknown to the grand jurors, must particularly describe the manner in which such instrument was used.

2. SAME—*when not sufficient to charge offense in language of statute.* Section 6 of division 11 of the Criminal Code, which makes an indictment technically sufficient which charges the offense in the language of the statute, does not apply where the statute so fails to describe the offense that the use of the statutory language will not apprise defendant of the real offense with which he is charged.

MAGRUDER, J., dissenting.

WRIT OF ERROR to the Circuit Court of Cumberland county; the Hon. FRANK K. DUNN, Judge, presiding.

At the August term, 1897, of the circuit court of Cumberland county, the grand jury returned an indictment of two counts against the plaintiff in error, charging him with the crime of producing an abortion. At the following February term, 1898, he appeared before the court and entered a motion to quash the indictment and each count thereof, which was overruled. He then entered his plea of not guilty, and a trial was had resulting in a verdict of guilty "of an attempt to procure an abortion," and upon this verdict the court, after overruling a motion for a new trial, sentenced him to the penitentiary.

The first count of the indictment charges "that Dr. Charles G. Cochran, late of the county of Cumberland and State of Illinois, on the 18th day of November, 1896, at and in the county aforesaid, did unlawfully and feloniously administer and use on one Stella Roberts, then and there being a woman pregnant with child, a certain instru-

ment, the name of which is to the grand jurors unknown, with the intent then and there to produce an abortion and miscarriage of the said Stella Roberts, and then and there did thereby unlawfully and feloniously cause the miscarriage of the said Stella Roberts, it not being then and there necessary to cause such miscarriage for the preservation of the life of the said Stella Roberts, the said Charles G. Cochran then and there well knowing that the said instrument would produce such miscarriage, and by reason of such miscarriage she, the said Stella Roberts, then and there died," etc. ˙The second count is substantially the same.

The only evidence of the defendant's guilt was the testimony of David Wickham, a confessed accomplice and guilty of the girl's pregnancy, who admitted on the witness stand that he had been promised immunity from punishment if he would testify in the case, and who was wholly uncorroborated. He testified, in substance, that he took Stella Roberts from her home in Hutton township, Coles county, to the defendant's house in Hazel Dell,—a village in the south-east corner of Cumberland county,—on the 18th day of November, 1896; that he had never been there before and did not know the doctor, but that the girl told him where to go; that he there "had a slight talk with him," the result of which was that he drove with the girl to a certain place designated by the doctor, some three miles north-west of the village, where the defendant met them and took the girl from the buggy to a fallen tree-top, a short distance from where the witness remained with the buggy; that he saw the girl lying on her back, the doctor being down at her feet, and that he saw him take out of his valise some bright instrument; that shortly afterwards they came back to the buggy, where he paid the doctor $20 and then took the girl back to Casey, in Clark county, and from there to her home. He does not state the distance between Hazel Dell and Hutton township, Coles county, where Stella Roberts

lived, but it must be from fifteen to twenty miles. He does not say he saw any use whatever made of the instrument, or that the girl manifested any indication of pain or other symptom of having been operated upon, but, on the contrary, says she never complained to him, and when he reached her grandparents' house, about nine o'clock that night, she made no complaint,—or words to that effect.

The defendant testified, in his own behalf, that he resided in Hazel Dell, where he had lived twenty-five years, and was a practicing physician at that place. He denied in the most emphatic terms that he knew or had ever seen Stella Roberts, or produced, in any way or manner, an abortion upon her, or attempted to do so, or that he had ever seen the prosecuting witness, Wickham, prior to his indictment. The evidence of Wickham is contradicted as to the time he and Stella Roberts were at the defendant's house on the 18th of November, several witnesses testifying to facts tending to show that at that hour the doctor was not at his house, but some distance in the country, visiting patients. There was some evidence that defendant had theretofore sustained a good reputation in the neighborhood and vicinity in which he lived, but that subject was not gone into very fully.

Stella Roberts died at her grandparents' house, in Coles county, about November 23, from the effects of an abortion. Her attending physician, Dr. Franklin, testified that the abortion was produced by taking medicine, though this statement was based simply upon what the patient told him, and his smelling upon her breath the odor of turpentine, camphor and oil of tansy, all of which, he testified, are abortives. There was other testimony offered upon the trial which tended to corroborate the defendant and contradict the prosecuting witness.

Among the grounds urged for a new trial was that of newly discovered evidence, supported by affidavits stating facts strongly tending to prove the defendant's innocence and contradict the prosecuting witness, Wickham.

This writ of error has been made a *supersedeas*, and a reversal of the judgment of sentence entered by the court below is insisted upon on several grounds.

L. N. BREWER, and EVERHART & DECIUS, for plaintiff in error.

SMITH MISNER, State's Attorney, and E. N. RINEHART, for the People.

Mr. JUSTICE WILKIN delivered the opinion of the court:

We are unable to see how the jury, upon the evidence as it is presented to us, could reach the conclusion that there was no reasonable doubt of the guilt of the plaintiff in error. In *Hoyt* v. *People*, 140 Ill. 588, and *Campbell* v. *People*, 159 id. 9, the defendants were each found guilty on the uncorroborated testimony of accomplices, and the judgments of conviction were reversed on the ground that the evidence was insufficient to sustain the verdicts. What was said in those cases as to the credibility of such testimony applies with at least equal force to the evidence of David Wickham in this record.

The newly discovered evidence, as shown by the affidavits filed, was very important to the defendant, but it was cumulative in its nature, and perhaps not of that conclusive character which would demand the granting of a new trial.

The statute under which the prosecution was had is section 3 of division 1 of the Criminal Code, as follows: "Whoever, by means of any instrument, medicine, drug, or other means whatever, causes any woman pregnant with child to abort or miscarry, or attempts to procure or produce an abortion or miscarriage, unless the same were done as necessary for the preservation of the mother's life, shall be imprisoned in the penitentiary not less than one year nor more than ten years; or if the death of the mother results therefrom, the person procuring or causing the abortion or miscarriage shall be guilty of murder."

In our opinion the indictment is wholly insufficient under the foregoing statute to sustain the conviction, and the court erred in refusing to quash it, and also in refusing to sustain the defendant's motion in arrest of judgment.  Both counts attempt to charge that the offense was committed with an instrument.  The first count says, "did  *  *  *  administer and use on one Stella Roberts *  *  *  a certain instrument."  The second count avers, "did  *  *  *  use on and administer to one Stella Roberts," etc.  No attempt whatever is made, in either count, to state how or in what manner the instrument was used "*or administered.*"  Whether it was done "by forcing, thrusting and inserting said instrument into the private parts," as was alleged in the indictments in *Baker* v. *People*, 105 Ill. 452, and *Scott* v. *People*, 141 id. 195, or in some other manner, is wholly left to inference.  If the evidence produced on the trial on this subject proves anything, it tends to show that some instrument was used by thrusting, etc., in the private parts of Stella Roberts; but no one will seriously contend that, under the allegations of the indictment, the use of an instrument with the intention of producing an abortion, in any other manner, would not have been equally admissible.

The only attempt to justify this departure from well understood rules of criminal pleading is the contention that, being a statutory offense, the indictment is sufficient as charging it in the terms and language of the statute, or so plainly that the nature of the offense might be easily understood by the jury, relying upon section 6 of division 11 of the Criminal Code.  It is true that under this section of the statute it is generally sufficient to state a statutory offense in the terms and language of the statute; but there are well understood exceptions to the rule. Where the language of the statute describes the act or acts constituting the offense, no more is necessary than to state the offense in that language, as where the offense is having in possession instruments used in counterfeit-

ing coin.  In an indictment for that offense it was held sufficient to allege that the defendant had in his possession, knowingly and without lawful excuse, certain instruments and tools used in counterfeiting the coin current in this State, being in conformity to the definition of the crime in the Criminal Code.  There the act constituting the offense was having in possession, etc., no matter by what means possession was obtained.  And so in *Loehr* v. *People*, 132 Ill. 504, the indictment being for defacing and altering a book, the language of the statute being, "if any judge, * * * or any person whatever, shall * * * alter, corrupt, withdraw, falsify or avoid any record, * * * the person so offending shall be imprisoned in the penitentiary not less than one nor more than seven years," it was held sufficient to state the offense in the language of the statute, without specifying particularly how the alteration was made.  Here, again, the offense consisted in the act of defacing or altering, no matter by what means or how it was done; and so as to the cases there cited, and many others relied upon by counsel for the People as sustaining this indictment.  In another class of cases, where the act constituting the offense is committed by means of doing certain things, such as obtaining money by means of a confidence game, it has been held sufficient to charge that the accused did unlawfully and feloniously obtain "money by means and by use of the confidence game."  These cases, however, are based either upon the express provision of the statute that it shall be deemed and held a sufficient description of the offense to charge that the accused did, on, etc., "unlawfully and feloniously obtain or attempt to obtain (as the case may be) from A B his money *by means and use of the confidence game*," or upon the theory that the term "confidence game" has a well understood meaning, the use of which in an indictment sufficiently apprises the accused of what he is called upon to defend.  *Morton* v. *People*, 47 Ill. 468; *Maxwell* v. *People*, 158 id. 248.

175—3

We said, however, in *Johnson* v. *People*, 113 Ill. 99 (on p. 102): "No principle of criminal pleading is better settled than that an indictment for a mere statutory offense must be framed upon the statute, and that this fact must distinctly appear upon the face of the indictment itself. That it shall so appear, the pleader must either charge the offense in the language of the act or specifically set forth the facts constituting the same. It sometimes happens, however, that the language of a statute creating a new offense does not describe the act or acts constituting such offense. In that case the pleader is bound to set them forth specifically. This elementary rule is laid down in all standard works on criminal law, and is fully recognized by this court.—1 Wharton on Crim. Law, secs. 164-372; *Kibs* v. *People*, 81 Ill. 599." And in Wharton on Criminal Pleading and Practice (sec. 220) it is said: "On the principles of common law pleading it may be said that it is sufficient to frame the indictment in the words of the statute in all cases where the statute so far *individuates* the offense that the offender has notice, from the mere adoption of the statutory term, what the offense he is to be tried for really is, but in no other case is it sufficient to follow the words of the statute. It is no more allowable, under a statutory charge, to put the defendant on trial without a specification of the offense than it would be under a common law charge."

In *West* v. *People*, 137 Ill. 189, will be found a citation of authorities to the effect that the constitutional provision, section 9 of article 2, providing that in all criminal prosecutions the accused shall have the right "to demand the nature and cause of the accusation" against him, is for the purpose of securing to him such specific designation of the offense laid to his charge as will enable him to prepare fully for his defense, and plead the judgment in bar of a subsequent prosecution for the same offense.

The manner in which the offense defined in section 3 of division 1 of the Criminal Code may be committed is

"by means of any instrument, medicine, drug or other means." The act of using an instrument is in no way described. The language, "by means" of any instrument, is broad enough to include any and every means by which an instrument could be used for the purpose of causing an abortion. It is, therefore, clear, that in order to make a good indictment against one for the commission of a crime by means of an instrument, as is said in *Johnson* v. *People, supra,* the "pleader is bound to set forth the acts specifically,"—that is, state with reasonable certainty the manner in which the act was committed. Furthermore, it is not true that this indictment charges the offense in the terms and language of the statute, as will be readily seen by comparing the statements therein made with section 3, *supra.* Just what is meant by *"administering"* an instrument to a person it is difficult to understand; and as we have said, the general statement that an instrument was used upon a person gives no indication of the manner in which it was used. A jury might conjecture or imagine from the allegations the nature of the offense with which the defendant is charged, but it cannot be said that it is so plainly alleged that it could be easily understood either by him or the jury.

In our opinion, to sustain this indictment would be to substantially lay down the rule that any indictment is sufficient which amounts to an accusation of the commission of a crime. It is not intended to announce any rule which will render nugatory the provision of section 6 of division 11 of the Criminal Code, wisely intended to simplify criminal pleading and dispense with many technical and useless averments heretofore required in indictments; but we are not prepared to hold that a defendant indicted, under a statute of this kind, for a most serious offense, is not fairly entitled to notice, by statements in the indictment, as to the act or acts with which he is charged in the commission of the offense. We have carefully sought for some precedent or authority which could fairly be

said to sustain this indictment, and have been wholly unable to find one. We are not willing to establish the precedent by this decision, and accordingly hold that the indictment, and each count thereof, is fatally defective.

The judgment of the circuit court will be reversed and the cause will be remanded.

*Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting.