W. M. SMARTT and P. K. CARSON *v.* STATE.

(*Nashville.*   December Term, 1903.)

1. **ATTORNEY-GENERAL.**  Oath of, pro tempore, need not be
   filed in office of secretary of state.

   The office of attorney-general *pro tempore*, at most, continues only
   during the term for which the officer is appointed, and his dut-
   ies are confined to a single county, and hence his oath need not
   be subscribed and filed in the office of the secretary of state, but
   it is sufficient if it be properly administered and a proper record
   is   made in   the   court   making   the   appointment.   (*Post,*
   *pp.* 544-545.)

2. **SAME.**  Pro tempore is not disqualified by previous and exist-
   ing employment to prosecute a case.

   The fact that the attorney-general *pro tempore*, who signed and
   sent to the grand jury an indictment, was, at the time of his ap-
   pointment and the performance of said act, the employed coun-
   sel of the prosecutor upon said indictment in the same matter,
   and to prosecute the same case, does not disqualify such attor-
   ney-general *pro tempore* to perform the duty of his office in such
   matter.   (*Post, pp.* 545-546.)

   Case cited and approved:   Silver v. State, MS., Knoxville Term,
   1902.

3. **SAME.**  Plea in abatement to indictment for his presence and
   action in grand jury room that is insufficient.

   A plea in abatement to an indictment upon the ground that the
   attorney-general "went in the grand jury room and discussed
   the case with the grand jury, and was present and advising and
   influencing the grand jury during the investigation of the case,"
   but which does not negative a request of the grand jury for his
   presence, or that the discussion and influence were in the mat-

Smartt and Carson v. State.

ter of giving legal advice, merely, and does not allege that he discussed the facts or evidence before the grand jury, or that he was present when the question was taken upon the finding of the indictment, is insufficient. (*Post, pp.* 545-546.)

Code cited and construed: Sec. 7041 (S.); sec. 5907 (M. & V.); sec. 5082 (T. & S. and 1858).

4. **PLEA IN ABATEMENT.** Requisites of.

No latitude can be given to a plea in abatement. It must be full, precise, definite, and clear. (*Post, p.* 546.)

5. **INDICTMENT.** For attempted abortion sufficiently describing the instrument used.

An indictment for an attempted abortion describing the instrument used as "certain instrument or instruments suitable for the purpose of producing an abortion" is sufficient in the description of the instrument used with intent to procure an abortion. (*Post, pp.* 546-548.)

Code cited and construed: Sec. 6464 (S.); sec. 5372 (M. & V.).

6. **SAME.** Same. Not bad for uncertainty as to whether one or more instruments were used with intent to procure abortion.

Where an offense may have been committed by different means, the means may be alleged in the same count in the alternative, and an indictment for an attempted abortion charging the employment of "certain instrument or instruments suitable for the purpose of producing an abortion" is not bad for uncertainty as to whether one or more instruments were used. (*Post, pp.* 546-548.)

Code cited and construed: Sec. 7084 (S.); sec. 5950 (M. & V.); sec. 5121 (T. & S. and 1858).

7. **SAME.** For attempted abortion by instruments must allege the manner of the use thereof.

An indictment for an attempted abortion by the use or employment of any instrument or other means with intent to procure an abortion must allege the way or manner in which the instrument or instruments were used and employed. (*Post, pp.* 546-550.)

Smartt and Carson v. State.

Code cited and construed:    Sec. 6464 (S.); ·sec. 5372 (M. & V.).

Cases cited and approved:    Rhodes v. State, 128 Ind., 189; Commonwealth v. Corkin, 136 Mass., 429; Cochran v. People, 175 Ill., 28; State v. McCoy, 52 Ohio St., 157.

8. **PRACTICE.** Prosecutor though a witness, may remain in court after the rule is granted, but should be examined first.

The attorney for the State has the right to such assistance as the prosecutor can give him in the management of the State's case, and, upon his request, it is not error to permit the prosecutor, though a witness, to remain in the courtroom after the rule has been called for and granted, but the court should impose as a condition that the State, if it desires to use the prosecutor as a witness, should examine him first. (*Post, pp.* 550-551.)

9. **SAME.** Same. Examination of prosecutor remaining in court after examination of other witnesses under the rule is not reversible error, when.

The error in the court's refusing to require the prosecutor to be examined first and allowing him to be examined as a witness subsequent to the examination of other witnesses, where the rule is called for and granted and he is permitted to remain in the courtroom, is not reversible error, where the supreme court can not see that any substantial injury was done to the defense. (*Post, pp.* 550-551.)

10. **EVIDENCE.** Of what wife of a defendant did is inadmissible, when.

In a prosecution for an attempted abortion, the wife of one of the defendants went to the house of the girl operated upon introduced to show that the wife was spiriting the girl away, where it is not shown that either of the defendants had knowledge of such visit, or was connected with it, is irrelevant and inadmissible, and being of a nature that would probably prove harmful to the defense, its admission, over objection of defendant, was reversible error. (*Post, pp.* 551-552.)

Smartt and Carson v. State.

11. PROVINCE OF JURY. Invaded by statement of court as to drawing inference from testimony.

A statement of the court made in the presence of the jury during a colloquy between the court and counsel in respect to certain testimony that such testimony "was competent, and from it that an inference might be drawn," was error, because such statement invaded the province of the jury. (*Post, p.* 552.)

12. EVIDENCE. Of wife of a defendant is admissible for another defendant jointly indicted with her husband.

The wife is not a competent witness in behalf of her husband in a criminal case, but she is a competent witness for another person jointly indicted and tried with her husband, and it is error to exclude her testimony as to such other defendant although the jury may apply her testimony to her husband notwithstanding proper instructions otherwise. (*Post, pp.* 552-553.)

13. ACCOMPLICE. Woman upon whom an abortion is committed or attempted is not; her evidence needs no corroboration.

Under our statute against abortion, or attempt to commit abortion, which does not fix any crime upon the woman who is the subject thereof, she is the victim, and is neither a principal nor accomplice, where the act is performed, or attempted to be performed upon her by another, and her testimony needs no corroboration, but her moral implication is a proper question for the consideration of the jury in weighing her testimony. (*Post, pp.* 553-555.)

Cases cited and approved: Regina v. Boyers, 1 B. & S., 311; Rex v. Hargrove, 5 C. & P., 170; People v. Commonwealth, 87 Ky., 487; Commonwealth v. Boynton, 116 Mass., 343; Commonwealth v. Brown, 121 Mass., 69; Commonwealth v. Drake, 124 Mass., 21; Commonwealth v. Follansbee, 155 Mass., 274; State v. Owens, 22 Minn., 238; State v. Pearce, 56 Minn., 226; State v. Hyer, 39 N. J. Law, 598; People v. Meyers, 5 N. Y. Cr. R., 120; Dunn v. People, 29 N. Y., 523; People v. Vedder, 98 N. Y., 630; People v. Mc-

Smartt and Carson v. State.

Gonegal, 136 N. Y., 62; Watson v. State, 9 Tex. App., 237; Commonwealth v. Wood, 11 Gray, 85; People v. Lohman, 2 Barb., 216; People v. Meyers, 5 N. Y. Cr. R., 120; Hunter v. State, 38 Tex. Cr. R., 61; Willingham v. State, 33 Tex., Cr. R., 98; People v. Josselyn, 39 Cal., 393; Solander v. People, 2 Colo., 48; Frazer v. People, 54 Barb., 306; Miller v. State, 37 Tex. Cr. R., 575; People v. Costello, 1 Denio, 83.

## FROM COFFEE.

Appeal from the Circuit Court of Coffee County.— JOSEPH C. HIGGINS, Judge.

Geo. S. RAMSEY, A. B. WOODARD, W. V. WHITSON, M. D. SMALLMAN and Geo. W. CROSS, for SMARTT and Carson.

ATTORNEY-GENERAL CATES, LILLARD THOMPSON, J. L. EWELL, and EDWIN L. DAVIS, for the State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiffs in error were indicted in the circuit court of Coffee county for the crime of committing an abortion upon the body of one Emma Emerson, and also for giving medicines and using instruments for the purpose of effecting an abortion. The first count was for

committing an abortion by means of medicines, and the second count for committing an abortion by the use of instruments. They were acquitted upon both of these counts. The third count was for giving or administering medicines for the purpose of producing an abortion. Smartt was convicted upon this count, and Carson was acquitted on it. The fourth count was for using an instrument or instruments for the purpose of producing an abortion. Carson was convicted on this count, and Smartt was acquitted on it.

The punishment of Smartt was fixed at eleven months in the county jail, and Carson's at ten months, and both have appealed and assigned errors.

1. The first assignment is for striking out the first ground stated in the plea in abatement filed by the plaintiffs in error. This assignment presented the point that J. L. Ewell, the *pro tempore* attorney-general, signed and sent to the grand jury the indictments in this case, yet "was never in fact nor in law such attorney-general *pro tempore* for the reason that he never wrote out and subscribed in writing the oath required by law to be taken by him before proceeding to the discharge of the duties of the office," and that the oaths, if any were taken, were not filed "in the office of the secretary of the state."

The office of attorney-general *pro tempore* at most, continues only during the term for which he is appointed and his duties are confined to a single county; hence we are of the opinion that the oath need not be subscribed

and filed in the office of the secretary of state, and that
it was sufficiently administered in the present case, and
a proper record made thereof in the court below.

It follows that the first point in the plea in abatement
was immaterial, as addressed to the indictment, and the
trial judge committed no error in striking it out.

2. The second point made in the plea in abatement
was that the "attorney-general *pro tempore* at the time
the indictment was drafted and submitted to the grand
jury, was the hired and employed counsel of the prosecu-
tor, T. M. Emerson, to prosecute these defendants on
this charge, and that he went into the grand jury room
and discussed the case with the grand jury, and was
present and advising and influencing the grand jury dur-
ing the investigation of the case, and that being the pri-
vate and personal counsel of the prosecutor, employed
by the prosecutor to prosecute this case, rendered him
incompetent and not qualified to be the attorney-general
*pro tempore* in this case;" that the State took issue on
this plea that thereafter, before the trial of the cause be-
gan, and on motion of the attorney-general, the trial
judge struck out the said second portion of the plea, to
which action the plaintiffs in error excepted.

This action of the trial judge is made the subject of
the second assignment of error.

As to the first point in the foregoing contention, that
the attorney-general *pro tempore* when appointed, was
already the employed counsel of the prosecutor in the

same matters, this was decided adversely to the contention of the plaintiff in error at the September term, 1902 at Knoxville, in the case of *Silver* v. *State,* and need not now be further considered.

As the second point, that the attorney-general "went into the grand jury room and discussed the case with the grand jury, and was present and advising and influencing the grand jury during the investigation of the case," we think must likewise be held bad. It is provided in the Code (Shannon's) section 7041 that, "whenever required by the grand jury, the prosecuting attorney may attend before it for the purpose of giving legal advice as to any matters cognizable by them, but shall not be present, nor shall any other officer or person, when the question is taken upon the finding of the indictment." The plea in abatement does not negative the fact that the presence of the attorney-general in the grand jury room was at the request of the grand jury, or that the discussion and influence were in the matter of giving legal advice, merely. It does not allege that he discussed the facts or evidence before the grand jury, or that he was present when the question was taken upon the finding of the indictment. No latitude can be given to a plea in abatement. It must be full, precise, definite, and clear.

The second assignment must therefore be overruled.

3.  The third assignment is based on the refusal of the court to sustain a motion to quash the second and fourth counts of the indictment.

The motion stated these grounds as follows: "(1)

Smartt and Carson v. State.

Because it is uncertain from the face thereof whether one or more instruments were employed in the alleged abortion, or whether any at all or not; (2) the character or kind of instrument is not set out, and no allegation that this could not be done on account of lack of knowledge of the grand jury; (3) the way or manner in which the instrument or instruments were used and employed is in no way alleged."

We need not refer to the second count, as the defendants were acquitted upon that.

The fourth count alleges that the defendants "did unlawfully, knowingly, willfully, maliciously, and feloniously use and employ certain instrument or instruments suitable for the purpose of producing an abortion on said Emma Emerson, a living woman, then and there pregnant with child unborn, with intent to procure the miscarriage of said Emma Emerson by means of the use application, and employment of said instrument or instruments on said Emma Emerson and said unborn child, the said use, application, and employment of said instrument or instruments not being done with a view to preserve the life of the mother, the said Emma Emerson, to the evil example of all others in like case offending, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

The statute to which this count is applicable reads:

"Every person who shall administer any substance with intention to procure the miscarriage of a woman then being with child, or shall use or employ any in-

strument or other means with such intent, unless the
same shall have been done with a view to preserve the
life of such mother, shall be punished by imprisonment
in the penitentiary not less than one nor more than three
years." Shannon's Code, section 6464.

It must be observed that the crime charged in this
fourth count is not the producing of an abortion by the
use of an instrument or instruments, but the crime
charged is the use of an "instrument or instruments"
with intent to procure an abortion on the body of
Emma Emerson.

The description given in the indictment is, "certain in
strument or instruments suitable for the purpose of pro-
ducing an abortion." We think this was a sufficient
description.

As to the point that it was uncertain whether one or
more instruments were used, we are of the opinion this
is covered by our statute (Shannon's Code, section
7084), that, where an offense may have been committed
by different means, "the means may be alleged in the
same count in the alternative." It is evident from the
form of statement used throughout the count that a sin-
gle instrument was referred to, and it is, of course, true
that in a surgical operation many instruments may be
used.

We are of the opinion that the third point is well
taken; that is, that the count was defective in failing to
allege the way or manner in which the instrument was
used.

In Cyc. L. and Proc., it is said:

"In charging the commission of an abortion by the use of an instrument, it is necessary to allege the manner in which the instrument was used." Volume 1, p. 178. In a note to the text, it is said that an indictment charging that defendant inserted an instrument into the "private parts" of a certain pregnant woman sufficiently alleged the manner of committing the offense. Also an indictment charging defendant with having feloniously introduced an instrument into the womb of a pregnant woman, with the intent to produce a miscarriage, was sufficient, although it did not allege what kind of a wound it produced, or what disease it caused. Citing *Rhodes* v. *State,* 128 Ind., 189, 27 N. E., 866, 25 Am. St. Rep., 429. It is also said that an indictment charging that defendant did "feloniously, maliciously, and unlawfully use a certain instrument, the name of which instrument is to the jurors unknown, which instrument defendant in his hands then and there held and had, by then and there forcing and thrusting the instrument aforesaid into the body and womb" of a certain woman, with intent thereby then and there to cause and procure the miscarriage, sufficiently alleged that the defendant unlawfully used an instrument with intent to procure a miscarriage, and it sufficiently described the instrument and the manner in which the defendant used it. Citing *Com.* v. *Corkin,* 136 Mass., 429. But where an indictment charged in the first count "that defendant did administer and use on one Stella Roberts a cer-

tain instrument," and in the same count "that defendant did use on and administer to one Stella Roberts a certain instrument with intent to procure her miscarriage," it was held that the manner in which the instrument was used was not sufficiently alleged. *Cochran* v. *People,* 175 Ill., 28, 51 N. E., 845. See, also, *State* v. *McCoy,* 52 Ohio St., 157, 39 N. E., 316; Hughes on Crim. L. & Proc., 1298.

The principle underlying the rule is that there must be sufficient facts alleged to reasonably identify the special transaction upon which defendant is being prosecuted, not only in order that he may know whereof he is accused, and may prepare his defense, but also that in case of a subsequent prosecution it may be made to appear whether he is prosecuted twice concerning the same matter. The mark of identification is slight, but it is substantial; and, in a class of cases where the allegations of the indictment are necessarily very general, such a means of marking the transaction, which the case easily lends itself to, should not be ignored, but should be insisted upon.

4. This assignment presents the point that the prosecutor, T. M. Emerson, was allowed to remain in the courtroom while other witnesses were examined, and was subsequently examined as a witness in behalf of the State, although the rule had been called for by the parties and granted by the court; that his so remaining was over the objection of the plaintiffs in error; and that the trial judge refused to enforce, as a condition of his

remaining, that, if examined at all, he should be first put upon the stand.

The attorney for the State has the right to such assistance as the prosecutor can give him in the management of the State's case, and, upon his request, it is not error to permit the prosecutor to remain in the court-room after the rule has been called for; but the court should impose as a condition that the State, if it desires to use the prosecutor as a witness, should examine him first. The action of the court in the present case in declining to pursue this course was error, but, inasmuch as we cannot see that any substantial injury was done to the defense of the plaintiffs in error in the court below by such action, it cannot be treated as reversible error in the present case.

5. The fifth assignment has already been substantially covered by the disposition of the third assignment, and need not be further noticed.

6. Under this assignment sundry points are grouped, the greater number of which we find to be not well taken and they need not be more specifically treated. There are, however, some objections included under this assignment which are well taken.

The State was permitted, over the objection of the plaintiffs in error, to prove that, a short time before Emma Emerson fled to Texas, the wife of Carson went to the house of Emma to see Emma; the evidence having been introduced to show that Mrs. Carson was spiriting the girl away, and it not being shown that either of

the plaintiffs in error had knowledge of such visit, or were connected with it. This testimony was irrelevant, and hence inadmissible, and, being of a nature that would probably prove harmful to the defense it was reversible error.

While the State was attempting to prove, over the objection of the plaintiffs in error, by the witness T. M. Emerson, the visit of Mrs. Carson to his house before the flight of Emma to Texas, a colloquy occurred between the court and counsel, in the presence of the jury, in respect of the testimony that had been admitted to the effect that Emma had started from the house of plaintiff in error Carson when she fled to Texas, and that Mrs. Carson had telephoned for the carriage to take her to the train; and during the colloquy the court said, referring to this testimony: "I said it was competent, and from it that an inference might be drawn." This was error, because the trial judge, in making the statement as to the inference, invaded the province of the jury.

There are several other points embraced in this assignment, but they are either of minor importance, merely cumulative in respect of matters of evidence, or were not objected to during the trial, and need not now be more particularly referred to.

7. This assignment presents the point that Mrs. Carson was a competent witness, was offered by the plaintiffs in error, would have given material testimony in behalf of the plaintiffs in error, and was wrongfully excluded by the court.

Mrs. Carson was not a competent witness in behalf of her husband, but she was competent for Smartt, and the court committed error in excluding her testimony as to him.    It is true that it would have been difficult to prevent the jury's applying the evidence also in favor of Carson; still that fact should not have deprived Smartt of evidence competent in his behalf.    Her testimony should have been permitted to go before the jury, so far as competent for Smartt, with proper instructions as to its exclusion in respect of the case of Carson.  The State cannot, by including two persons in the same indict-ment deprive either of them of testimony that would otherwise have been competent as to him, and force either to apply for a severence in order to use evidence avainable to him.

8.    This assignment makes the point that Emma Em-erson was an accomplice in the crime, and hence that there could be no conviction unless she should be corrob-orated as to the complicity of the plaintiffs in error in the crime.

This assignment is overruled.   Our statute upon the subject of abortion does not fix any crime upon the woman who is the subject of the abortion, or attempt at abortion.    It is directed against those who perform the abortion or attempt to perform it, upon her,   She is the victim, and is neither principal nor accomplice, under the law, where the act is performed, or attempted to be performed, upon her by another.

The weight of authority elsewhere is to the same effect

Hughes on Crim. Law & Prac. section 1919.    In 1 Am. and Eng. Ency. Law (2d Ed.), 191, it is said: "According to the weight of authority both in England and the United states, a pregnant woman who takes medicine or submits to other means to produce an abortion is not an accomplice, even though she solicit the use of the means employed."    Citing *Regina v. Boyers*, 1 B. & S., 311; *Rex* v. *Hargrove*, 5 C. & P., 170; *People* v. *Com.*, 87 Ky., 487, 9 S. W., 509, 810; *Com.* v. *Boynton*, 116 Mass., 343; *Com.* v. *Brown*, 121 Mass., 69; *Com.* v. *Drake*, 124 Mass., 21; *Com.* v. *Follansbee*, 155 Mass., 274, 29 N. E., 471; *State* v. *Owens*, 22 Minn., 238; *State* v. *Pearce*, 56 Minn., 226, 57 N. W., 652, 1065; *State* v. *Hyer*, 39 N. J. Law, 598; *People* v. *Meyers*, 5 N. Y. Cr. R., 120; *Dunn* v. *People*, 29 N. Y., 523, 86 Am. Dec., 319; *People* v. *Vedder*, 98 N. Y., 630; *People* v. *McGonegal*, 136 N. Y., 62, 32 N. E., 616; *Watson* v. *State*, 9 Tex. App., 237. And it is held that, not being an accomplice, she does not need corroboration in her testimony.    Citing *Com.* v. *Wood*, 11 Gray, 85; *State* v. *Hyer*, supra; *People* v. *Lohman*, 2 Barb., 216; *People* v. *Meyers*, 5 N. Y. Cr. R., 120; *Dunn* v. *People*, supra; *Watson* v. *State*, supra. The same propositions are supported in Cyc. L. and Proc. pp. 175, 191, citing the same authorities, and in addition thereto *Hunter* v. *State*, 38 Tex. Cr. R., 61, 41 S. W., 602, and *Willingham* v. *State*, 33 Tex. Cr. R., 98, 25 S. W., 424.    In Ency. Ev., vol. 1., p. 61, it is said: "In the absence of a statute denouncing the attempt of a woman to procure her own miscarriage, she is not regarded as

an accomplice, even when her consent is shown." Citing the same authorities above referred to, and in addition thereto *People* v. *Josselyn,* 39 Cal., 393; *Solander* v. *People,* 2 Colo., 48; *Frazer* v. *People,* 54 Barb., 306; *Miller* v. *State,* 37 Tex. Cr. R., 575, 40 S. W., 313; and to the point that her evidence is sufficient, *People* v. *Costello,* 1 Denio, 83. But her moral implication is a proper question for the consideration of the jury in weighing her testimony. 1 Am. & Eng. Ency. Law.

9. This assignment presents the point that the venue is not proven as to the charge on which Smartt was convicted. The assignment must be sustained.

10, 11, 12. These assignments refer to the weight of the testimony upon the case stated in the indictment, and will not be considered, inasmuch as the case must go back for a new trial as to Smartt.

The result is that, on the grounds stated in our discussion of the third assignment the indictment must be quashed as to Carson, and on the other ground stated the judgment of the circuit court must be reversed as to Smartt, and the cause remanded for a new trial.