[No. 13019.   Department Two.   November 24, 1915.]

THE STATE OF WASHINGTON, *Respondent*, v. A. C. A. GAUL, *Appellant*.[1]

ABORTION—INDICTMENT AND INFORMATION—DUPLICITY—SUFFICIEN-
CY—MEANS EMPLOYED. Under Rem. & Bal. Code, § 2448, defining the
offense of abortion as (1) administering any medicine or drug, or
(2) using any instrument, with intent to produce a miscarriage, an
information charging, in the language of the statute, the accused with
administering to A. L. drugs and medicines unknown to the prose-
cutor, and using upon her person an instrument unknown to the
prosecutor, for the purpose of causing a miscarriage, is not open to
the objection of duplicity in that it states distinct offenses, or that
it is insufficient in failing to allege the means employed.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—REQUESTS—SUFFICIENCY—
NONDIRECTION. A requested instruction, inartificially drawn and di-
recting too strongly a finding of innocence upon the sole question of
intent, does not, by calling the court's attention to that special
phase of the question, make it reversible error for the court to fail
to give a proper instruction specially covering the point, in the ab-
sence of a specific request for an instruction, good in point of law
and appropriate to the evidence, where the court by general in-
structions correctly and clearly charged as to what was necessary
to be proven beyond a reasonable doubt, etc.

SAME—TRIAL—WITNESSES—CREDIBILITY OF IMPEACHED WITNESS—
IMMORALITY—INSTRUCTIONS. Upon the impeachment of a female
witness by showing her immoral acts, the jury is not to be in-
structed that it is their duty to disregard her testimony if they
believed that she had lost respect for truth or was ready to per-
jure herself in her own interest, as the same would be unlawful
comment on the evidence; but should be instructed that they are
the judges of the credibility of the witnesses, and may take into
consideration their former life or conduct and addiction to im-
moral habits, etc.

Appeal from a judgment of the superior court for Lewis
county, Rice, J., entered April 14, 1915, upon a trial and
conviction of abortion. Affirmed.

*Hayden, Langhorne & Metzger* and *Thacker & Hancock*,
for appellant.

*H. E. Donohoe* and *C. D. Cunningham*, for respondent.

[1]Reported in 152 Pac. 1029.

HOLCOMB, J.—Appellant was charged with, and convicted in the superior court of, the crime of abortion.

I. The first claim of error by appellant is that the information is insufficient and the demurrer thereto was erroneously overruled. The charge of the information, omitting formal parts, is as follows:

". . . then and there being, did then and there wilfully, unlawfully, and feloniously and with intent then and there had to produce a miscarriage on the person of A. L., a woman, administer to the said A. L. drugs and medicines unknown to the prosecuting attorney, for the purpose of producing a miscarriage, and he, the said A. C. A. Gaul, then and there being, did then and there wilfully, unlawfully and feloniously and with intent to produce a miscarriage on the person of A. L., a woman as aforesaid, use upon the person of said A. L., for the purpose of producing a miscarriage, an instrument the character of which is unknown to the prosecuting attorney, and said intended miscarriage was not necessary to preserve the life of the said A. L. or that of the child whereof she was then and there pregnant."

The statute upon which this information is based is as follows:

"Every person who, with intent to produce the miscarriage of a woman, unless the same is necessary to preserve her life or that of the child whereof she is pregnant, shall—

"(1) Prescribe, supply, or administer to a woman, whether pregnant or not, or advise or cause her to take any medicine, drug or substance; or,

"(2) Use, or cause to be used, any instrument or other means;

"Shall be guilty of abortion, and punished by imprisonment in the state penitentiary for not more than five years, or in the county jail for not more than one year." Rem. & Bal. Code, § 2448 (P. C. 135 § 391).

The information follows the statute. In so doing, however, appellant asserts, (1) that it either charges two separate and distinct offenses, one committed by means of drugs and medicines unknown, the other by the use of an instru-

ment unknown, or that it fails to allege any offense what-
ever by reason of its duplicity; and (2) that it fails to allege
any offense because it does not state the means employed,
and does not allege how, if an instrument was relied upon,
it was used, or where, upon the person of the woman, it was
used; citing: *Smartt v. State,* 112 Tenn. 539, 80 S. W.
486; *State v. Brown,* 3 Boyce (26 Del.) 499, 85 Atl. 797;
1 Corpus Juris, p. 319; 11 Ann. Cases, p. 222, note;
*Cochran v. People,* 175 Ill. 28, 51 N. E. 845; *State v. Dodd,*
84 Wash. 436, 147 Pac. 9. The *Smartt* and the *Cochran*
cases sustain the contention of appellant, but the rule in
those cases has been rejected by a larger number of courts
dealing with the same question. *State v. Longstreth,* 19 N.
D. 268, 121 N. W. 1114, Ann. Cas. 1912 D. 1317; *State v.
Bly,* 99 Minn. 74, 108 N. W. 833; *People v. Wah Hing,* 15
Cal. App. 195, 114 Pac. 416; *Commonwealth v. Sinclair,*
195 Mass. 100, 80 N. E. 799; Bishop's Criminal Procedure,
§ 453; 2 Wharton, Criminal Law (11th ed.), p. 1009.

Thus Wharton states the rule:

"Drug or substance used to procure abortion or miscar-
riage need not be set out by name or described in indict-
ment. Instrument being charged as used with criminal in-
tent to procure abortion or miscarriage, the indictment need
not allege the name or kind or character of the instrument
or the manner in which used, or set out that the same is un-
known to the jurors."

Thus Bishop:

"If an offense may be committed by different means, and
the pleader doubts which was employed in the particular in-
stance, he may in one count charge its commission by all, and
proof of any one will sustain the allegation. The limit to
this doctrine is, that the means must not be repugnant."
[Quoted from *State v. O'Neil,* 51 Kan. 651, 33 Pac. 287, 24
L. R. A. 555.]

"It is a well settled rule of criminal pleading that when
an offense against a criminal statute may be committed in
one or more of several ways, the indictment may, in a single

count, charge its commission in any or all of the ways speci-fied in the statute." 22 Cyc. 380.

See, also, *State v. Pettit*, 74 Wash. 510, 133 Pac. 1014.

Certainly, there are well recognized exceptions to the rule that it is generally sufficient to charge the commission of an offense in the language of the statute defining the offense, under the just rule that there must be sufficient facts al-leged, not only that the accused may know for what precise offense he is prosecuted and prepare his defense thereto, but also that, in case of a subsequent prosecution, it may be made to appear whether he is prosecuted twice concerning the same subject-matter. But as to the information now before us, under the statute defining abortion, to quote from *State v. Bly, supra:*

"That it does not sufficiently notify the offender of the nature of the charge to enable him to prepare for trial has no reasonable foundation. That his defense could possibly turn or depend on the exact instrument or method of opera-tion is not within the realm of possibility. Every essential item is set out for his enlightenment . . ."

The supreme court of California in the *Wah Hing* case, *supra*, held upon a similar indictment to the same effect, ex-pressly disapproving the *Cochran* case decided by the Illinois supreme court; and further said:

"We cannot see that, after a conviction under this indict-ment, the defendant would be in danger, through any indefi-niteness in its averments, of a second conviction for the same offense, nor can we see that he was not sufficiently in-formed of the offense charged to enable him to prepare his defense."

The information was sufficient, and the demurrer was prop-erly overruled.

II. At the trial, the court allowed the state, over the ob-jection of appellant, to introduce testimony of sexual in-tercourse had by appellant with complaining witness for a period of more than a year preceding the date on which the

abortion was alleged to have been performed. The state claimed the evidence was admissible to show that the complaining witness was pregnant by the appellant, and thus show a motive on the part of appellant to commit the crime. The appellant then interposed the defense that he was impotent, and that, therefore, it was impossible for him to impregnate the complaining witness or any other woman. Physicians were produced who testified to having made proper examination, and that appellant was sterile and incapable of procreation. This evidence the state rebutted by the testimony of physicians that sterility might be found on one or several examinations, and still the subject be potent at other times and capable of procreation.

At the close of all the testimony, appellant requested the court to give the following instruction, which was refused, and none other upon the same subject given:

"It is claimed by the state that the defendant had sexual relations with said A. L. for a period of time previous to December 14, 1914, and that because of said sexual relations with defendant, said A. L. has become pregnant with child. The purpose of the introduction of this testimony by the state is to show that the intention of the defendant was to relieve the pregnant condition of said A. L. from her condition of pregnancy caused by said defendant. It is claimed by the defendant that the said A. L. did not become pregnant because of any sexual relations with him, and that he was impotent. In other words, that the said defendant was incapable of causing the said A. L. to become pregnant, and if you find this to be true from all the evidence, then I instruct you that it would be your duty to find for the defendant on the question as affecting his criminal intention, and if you find that there is no other evidence in the cause showing a criminal intention on his part to procure a miscarriage of A. L., then it will be your duty to acquit the defendant."

It is not very stoutly maintained by appellant that this proposed instruction is not somewhat inartificially drawn, and somewhat too strong in its direction to the jury to find for the appellant on the sole question of intent as limited

wholly to evidence of appellant's power to impregnate the complaining witness, or lack of such power. It is true that the intent on the part of accused, at the time and place alleged, to commit an abortion upon the complaining witness, was an essential element of the crime and necessary to be proven beyond a reasonable doubt. The court so instructed the jury. Appellant contends, however, that, although the offered instruction was not correct in law, the court's attention having been directed to that subject at the time, it was its duty to give a correct instruction.

The question is not without its difficulty. The evidence of sterility was not a defense to the charge against appellant. Manifestly one could be wholly impotent sexually and still perfectly capable of committing an abortion. On the other hand, an abortion could not be produced unless there was pregnancy, and the state proved intercourse in order to prove pregnancy, and intercourse with appellant in order to strengthen and corroborate its case by showing an underlying motive on the part of appellant to bring about the miscarriage.

"The motive leading to the commission of a crime need not be shown, but the intent with which it was done must be proved in all those cases where intent is essential to the crime charged. The absence of motive shown for the commission of the crime may be considered by the jury as to the bearing of that fact on whether the defendant committed the crime, and to this point only, and proof of motive may be of great importance in those cases depending upon circumstantial evidence; . . ." 1 Wharton, Criminal Law, p. 200.

See, also, *Lillie v. State*, 72 Neb. 228, 100 N. W. 316; *State v. Hendricks*, 172 Mo. 654, 73 S. W. 194; *Clifton v. State*, 73 Ala. 473; *Longley v. Commonwealth*, 99 Va. 807, 37 S. E. 339; *Cupps v. State*, 120 Wis. 504, 97 N. W. 210, 98 N. W. 546, 102 Am. St. 996.

An instruction to the above effect, if requested, would no doubt have been proper in the main. But the absence of motive leading up to the commission of the crime did not elim-

inate all question of intent, if the jury believed that the offense was actually committed, and committed beyond a reasonable doubt by the appellant. Intent need not be proven by any direct testimony. The intent with which an act is done is a mental process, and as such generally remains hidden within the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence, but may be inferred or gathered from the outward manifestations, by the words or acts of the person entertaining it, and the facts or circumstances surrounding or attendant upon the offense with which he is charged. *Roberts v. People*, 19 Mich. 401; *Clary v. State*, 61 Neb. 688, 85 N. W. 897. Judged by these principles, the offered instruction was not good.

Should the court, however, as appellant insists, having had that phase of the case called to his attention in a prayer for an instruction specially covering it, have given some instruction upon it?

"The general rule now is, except in cases where there are specific provisions of the statute which are mandatory upon the court, . . . that, . . . 'mere *non-direction*, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused." *State v. Ross*, 85 Wash. 218, 147 Pac. 1149, and authorities there cited.

In the instant case, although the trial judge did not specially refer to the testimony of the defense, he instructed that "the law requires the jury to be satisfied of the defendant's guilt beyond a reasonable doubt, in order to warrant a conviction; and if, after hearing all the testimony in this case, you have a reasonable doubt in your mind as to the guilt of the defendant, then it is your duty to find the defendant not guilty." He had previously charged the jury very clearly and correctly as to what was necessary to be proven by the prosecution under the information in order to establish the commission of the crime and the guilt of the defendant. We do not believe, therefore, that the mere nondirection or par-

tial nondirection of the jury upon the special phase of the case submitted by appellant was prejudicial so as to justify a new trial.

III. The third claim of error is that the court refused to give the following instruction requested by appellant, or any upon the same subject:

"You are further instructed that, if you believe from the evidence introduced that the said A. L. is of an immoral character, and has been guilty of immorality and is addicted to vicious habits, or is prone to commit immoral acts, then, as a matter of law, she may be presumed to have lost respect for truth, and to be ready to perjure herself when it is to her interests to do so, and if you believe this to be true from all the facts, then it is your duty to disregard her testimony."

It is urged that this instruction is proper under the rule announced in *State v. Jackson*, 83 Wash. 514, 145 Pac. 470, and the authorities therein followed. That case and the cases followed passed upon the question of the admissibility of evidence to show immoral habits or conduct of witnesses, either upon cross-examination or by the direct testimony of other witnesses to affect the credibility of the witnesses assailed, and whether that method of impeachment was as permissible as any other. In none of the cases cited or relied upon, and in none that we have ever seen, nor in any textbook, has it ever been announced as a rule of law that, in a case where a witness has been impeached, it is the duty of the jury to disregard the testimony of such witness. There are, as said in the *Jackson* and other cases, a variety of methods of attacking the credibility of a witness or impeaching the testimony. Nevertheless, it is still the province of the jury to determine the facts and to judge the credibility of every witness. It is the law that the testimony of a witness who has been impeached *ought not to be wholly disregarded* by the jury, if the jury feel justified, from the deportment of the witness on the stand or the probability of his testimony, in believing it or any part of it, even if he receives no other corroboration.

*Green v. Cochran,* 43 Iowa 544; *Addison v. State,* 48 Ala. 478; *City Bank of Macon v. Kent,* 57 Ga. 283; *Roy v. Goings,* 112 Ill. 656; *State v. Roberts,* 50 W. Va. 422, 40 S. E. 484.

The only evidence there was in the case in hand tending to show the complaining witness to be immoral and vicious, was her own testimony of her sexual relations, which she testified were with appellant exclusively for over a year, and appellant's testimony of such relations with her. This, of course, without other evidence, establishes her unchaste and immoral conduct. In such case, had appellant requested same, an instruction might have been given, with perfect propriety, to the following effect: That the jury are the sole judges of the credibility of witnesses, and the weight to be given to their testimony; and in passing upon the testimony of any witness, the jury have a right to take into consideration the interest any such witness may have in the result of this trial, the manner of testifying, the former life or conduct, and the addiction to immoral habits of any such witness as given by herself (or otherwise shown), in determining the credibility of any such witness and the weight to be given the testimony of such witness. *Lancashire Ins. Co. v. Stanley,* 70 Ark. 1, 62 S. W. 66; *State v. Haynes,* 7 N. D. 352, 75 N. W. 267. In all such cases it must be borne in mind that the trial court must not violate the constitutional inhibition that "judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." The instruction offered by appellant would plainly have violated the above provision. It would have been gross error to give it.

We find no error sufficient to justify a reversal. Affirmed.

Main, Mount, and Parker, JJ., concur.