[No. 15792.  Department One.  February 23, 1921.]

# THE STATE OF WASHINGTON, *Respondent*, v. H. DEMAS, *Appellant*.[1]

WITNESSES (103)—IMPEACHMENT—CHARACTER OF WITNESS—HAB-
ITS—IMMORALITY. The prosecuting witness in a prosecution for sod-
omy cannot be impeached by proof of immoral habits or individual
acts of immorality.

CRIMINAL LAW (213)—TRIAL—VIEW OF PREMISES—DISCRETION OF
COURT. Whether the jury in a criminal case shall be permitted to
view the premises is entirely discretionary.

SAME (131)—EVIDENCE—ADMISSION—BY ACCUSED TO PEACE OF-
FICER. In a prosecution for sodomy, it is admissible for the officer
making the arrest to testify that accused admitted having seen the
complaining witness on the day in question in the vicinity of the
place where the crime was alleged to have been committed.

SODOMY—DEFENSES—IMMORALITY OF PROSECUTING WITNESS. In a
prosecution for sodomy, it is proper to instruct that the moral char-
acter of the prosecuting witness is immaterial, except upon the ques-
tion of his credibility.

Appeal from a judgment of the superior court for
Snohomish county, Alston, J., entered October 25, 1919,
upon trial and conviction of sodomy. Affirmed.

*C. D. Liliopoulos* and *William Sheller*, for appellant.

*Thos. A. Stiger*, for respondent.

BRIDGES, J.—The defendant was convicted of a cer-
tain crime which the state charged he had committed.
From judgment of sentence, he has appealed. By in-
dependent testimony, he sought to impeach the testi-
mony of the complaining witness for the state by show-
ing that he had been guilty of immoral acts and con-
duct, and the court sustained the state's objections to
that character of testimony. In its ruling it said:

"There is only one thing I will permit you to show
with reference to the witness (complaining witness)

[1]Reported in 195 Pac. 1001.

and that is his reputation for truth and veracity.
Whether he was immoral or moral was not a matter
upon which he can be impeached, but you may simply
show his reputation for truth and veracity as affecting
his credibility as a witness. . . . Now, it is wholly
immaterial to this case whether this boy is immoral or
very moral except in so far as it may bear upon his
testimony—his credibility as a witness. Now, you can-
not bring witnesses to prove he is immoral . . .
but whether or not this boy has been guilty of things
which made it necessary for the school authorities to
chastise him or reprimand him is not an issue in this
case, and you cannot show those things even for the
purpose of affecting his credibility as a witness, but if
you want to impeach his testimony you may show
whether or not he is a boy whose word is considered
good or bad in the community in which he lives,
whether or not he is a truthful or untruthful boy.''

The appellant argues that he was entitled to show
the immoral character of the state's witness, and cites
several cases in support of this contention. Among
those cited are *State v. Jackson*, 83 Wash. 514, 145
Pac. 470, and *State v. Gaul*, 88 Wash. 295, 152 Pac.
1029. This court in those two cases held that inde-
pendent and separate testimony might be received to
show the general moral reputation of a witness for the
purpose of affecting his credibility, but we have never
gone so far as to hold that occasional or isolated in-
stances of immoral acts might be proven for that pur-
pose. In the case of *State v. Jackson, supra,* we said:

''We nevertheless believe that the reputation of a
witness for immorality may be inquired into, either
upon cross-examination or by a resort to general repu-
tation. It is not the manner of proof that concerns
the law so much as the object sought to be attained,
for, as said by this court in the *Coella* case, a woman
cannot ruthlessly destroy that quality upon which most
other good qualities are dependent and for which,
above all others, a woman is reverenced and respected,

and retain her reputation for truthfulness unsmirched. We can mark no distinction between receiving evidence as to the reputation of a witness for truth and veracity and receiving evidence of reputation as to moral character, when this court has said that a reputation for immorality is a thing to be considered when passing upon the credibility of a witness.''

It will be observed that the court in that case limited the proof to reputation for morality or immorality. We have no disposition to enlarge upon the doctrine of that case. But it is stated that we have already broadened the doctrine of the *Jackson* case, because, speaking of that case in *State v. Gaul, supra,* we said:

''That case and the cases followed passed upon the question of the admissibility of evidence to show immoral habits or conduct of witnesses, either upon cross-examination or by the direct testimony of other witnesses to affect the credibility of the witnesses assailed, and whether that method of impeachment was as permissible as any other.''

When we used the words ''immoral habits or conduct of witnesses,'' we were using them in the sense of the reputation of the witness concerning his morality or immorality, and there was no intention of holding or intimating that individual acts of immorality might be shown.

It is said, however, that the ruling of the trial court upon the objections made was broad enough to deny the appellant the right to introduce independent testimony showing, if he could, the reputation of the state's witness for immorality. The result of the court's ruling was entirely right, because the question asked by the appellant sought to bring out individual acts of immorality. At no time did he offer to show the reputation of the state's witness for morality or immorality. On the contrary, during the progress of his ruling the court asked appellant's attorney what he proposed

to prove by the witness then on the stand, to which the attorney answered that he wanted "to prove that the complaining witness, Milton Draper, had been found in the commission of immoral acts while attending the school under—especially the class of Mr. Duskin, and that he exhibited an immoral character." The Mr. Duskin mentioned was appellant's witness then being examined by his attorney. While the court in making its ruling said some things which might tend to indicate that it was of the opinion that appellant could not attack the reputation for morality of the state's witness, yet it said other things which indicated an entirely different state of mind. In any event, the court was not called upon to rule on this question, nor did appellant intimate that he wanted to introduce any evidence of this character.

The appellant claims error because the court refused his request that the jury be permitted to view the premises where it was alleged the crime was committed. Quite elaborate maps had been made by competent witnesses showing the location and its surroundings, and various witnesses had testified in great detail on the subject. Whether the jury will be permitted to view the premises where a crime is committed or accident happens is entirely discretionary with the trial court. In this instance, we cannot hold that the court abused its discretion. On the contrary, there is nothing in the record to indicate that there was any considerable necessity for the jury to see the premises or that the appellant could have, in any wise, been prejudiced by the decision of the court. From the maps and the witnesses, the jury could easily acquire an intimate and accurate knowledge of the place and its surroundings.

One Wilson, a witness for the state, testified, over the objections of the appellant, that he was one of the

peace officers of King county, and had arrested the appellant for the crime for which he was tried. He further testified to a conversation between himself and the appellant wherein the latter had admitted to him that he had seen Milton Draper, the complaining witness, on the day in question and at the place where the crime is alleged to have been committed. The appellant objected to this testimony and requested the court to give the following instruction concerning it, to wit:

"The evidence of the witness Wilson that the defendant made admissions that he had seen the complaining witness, Milton Draper, in the vicinity of the place where this crime is claimed by the state to have occurred, is no evidence that the defendant committed or participated in the commission of the crime charged in the information."

We think the court ruled properly in permitting this witness to testify and in refusing to give the appellant's requested instruction. That testimony tended strongly to show that the appellant was at or near the place where the crime was committed, at the time it is alleged to have been committed, and was with or near the complaining witness, and it also tended to corroborate the testimony of that witness.

The appellant also complains about the court's instruction No. 3, reading as follows:

"You are instructed that it is wholly immaterial what the moral character of the complaining witness, Milton Draper, was, or is, so far as the guilt or innocence of the defendant is concerned, and the only purpose for which you should consider any testimony bearing on the character of the said witness, if at all, is in so far as it will affect the weight which you will give to his testimony."

This instruction properly stated the law and is not open to criticism.

There are one or two other assignments of error which we deem it unnecessary to discuss. We have carefully considered them and do not find any merit in them. The record indicates that the appellant has had a fair trial, and we cannot see any reason why the cause should be reversed. The judgment is affirmed.

PARKER, C. J., MACKINTOSH, FULLERTON, and HOLCOMB, JJ., concur.