STATE OF IOWA v. HARRY MOOTHART, Appellant.

**Attempt to Produce Miscarriage:** INDICTMENT. An indictment under Code, section 4759, charging defendant, in the language of that section, with administering a drug with intent to produce a mis-

carriage of a pregnant woman, is not insufficient because it does not set forth the manner of administering the drug or describe its nature; section 5289 providing that an indictment is sufficient if the offense is stated so as to enable a person of common understanding to know what is intended, and the court to pronounce a lawful judgment on conviction.

How committed. The crime defined by Code, section 4759, of attempting to produce a miscarriage of a pregnant woman, may be committed whether or not the intended means are used or taken, or the miscarriage is produced.

What is "administration of drug." Evidence that defendant mailed a drug to a pregnant woman, to be taken by her to produce a miscarriage, is evidence of administration thereof, within the meaning of Code, section 4759, punishing one who administers a drug for that purpose.

Evidence: credibility: *Instructions.* Where the jury in a prosecution for administering a drug to a pregnant woman are sufficiently instructed as to the rules for determining the credibility of witnesses and the weight to be given their testimony, there is no error in failing to specifically tell the jury that the testimony of the prosecutrix is to some extent discredited because she was a willing accomplice.

Admissibility and competency. In a prosecution for attempting to produce a miscarriage of a pregnant woman, there was no error in admitting her evidence of the identity of letters from defendant to her, competent to show their relations.

*To show intent.* In a prosecution for administering a drug with intent to produce a miscarriage of a pregnant woman, which was successful, a letter which defendant wrote to her subsequent to the act charged, saying, "I wish you would give the writer a fair test," the word "writer" being explained as referring to a lead pencil given her by him to produce a miscarriage, is competent to show the intent.

Harmless error. Conceding that secondary evidence of the contents of a letter ought not to have been admitted, it was harmless error, where it only proved an uncontroverted fact.

*Appeal from Washington District Court.*—Hon. John T. Scott, Judge.

Friday, October 6, 1899.

The defendant was charged by indictment in two counts with attempting to procure miscarriage. In the first it is charged that he "did willfully, feloniously, and unlawfully

administer to one Martha Marr, she, the said Martha Marr, being then and there a pregnant woman, a certain drug or substance, commonly called 'ergot,' with intent to produce the miscarriage of her, the said Martha Marr, a pregnant woman as aforesaid; the said miscarriage not being necessary to save the life of her, the said Martha Marr." The second count is the same, except that it is alleged that the "drug or substance" was to the grand jury unknown. · The defendant was found guilty, and sentenced to imprisonment in the penitentiary for the term of two years and six months, and from this judgment he appeals.—*Affirmed.*

*H. & W. Scofield* for appellant.

*Milton Remley,* Attorney General, and *C. A. Van Vleck* for the State.

GIVEN, J.—I.   The defendant's first contention is that the indictment is defective, in that it does not set forth the manner of administering the drug, nor sufficiently describe the drug, "and state whether it was liquid, solid or gaseous." It is argued that as there are various forms of drugs, and various ways of administering them, the form of the drug and the manner in which it was administered should be set out. Section 4759 of the Code, under which this indictment is found, is as follows: "If any person, with intent to produce the miscarriage of any pregnant woman, willfully administer to her any drug or substance whatever, or, with such intent, use any instrument or other means whatever, unless such miscarriage shall be necessary to save her life, he shall be imprisoned in the penitentiary for a term not exceeding five years, and be fined in a sum not exceeding one thousand dollars." Section 5289 of the Code provides that the indictment is sufficient if it can be understood therefrom" (5) that the act or omission charged as the offense is stated in ordinary and concise language, with such

certainty and in such manner as to enable a person of common understanding to know what is intended, and the court to pronounce judgment according to law upon a conviction." This indictment clearly states as fact that which, if true, constitutes an offense punishable by law, and it is direct and certain as to these facts. See *State v. Potter,* 28 Iowa, 554; *State v. Chicago, B. & Q. Ry. Co.,* 63 Iowa, 508; *State v. Brandt,* 41 Iowa, 593, and like cases cited are not in point.

This charge brings the case clearly within said section 4759. Defendant also contends that the indictment is defective for that it does not charge that the drug was taken. It is argued that it could not be "administered" unless taken. If taking is necessary to constitute an administering then to charge that it was administered charges that it was taken. The crime, however, defined in said section 4759, and charged in this indictment, is "attempting to produce miscarriage," and may be committed whether the intended means are used or taken or not, and whether the intended miscarriage is produced or not. The indictment sufficiently charges the crime of "attempting to produce miscarriage."

II.    Defendant next contends that the evidence does not show "an administering of the drug." It shows that for some time immediately prior to the matters charged the defendant and Martha Marr were intimate; that he frequently visited her at places where she was living, distant from where he lived; and that they indulged in sexual intercourse, which resulted in her becoming pregnant. It shows that it was arranged between them that the defendant should procure and send to her by mail a drug that would produce a miscarriage, and which she was to take for that purpose. The defendant procured a drug called "ergot," which, if taken in sufficient quantity by a pregnant woman, will produce miscarriage, and sent it to Martha Marr by mail. She received the drug, and took two doses, but not in sufficient quantity to produce the intended result. It is argued that, to administer the drug,

the defendant must have been personally present, and have given it to Martha Marr to be taken. It is said, "The statute contemplates that the administering shall be as personal and direct as where it uses the words, 'used any instrument.'" The words "used any instrument or other means," as found in said section, do not mean that the accused must have performed an operation in person with the instrument or other means. He uses the instrument or other means when he furnishes them to be applied to the forbidden purpose, and he administers the drug when he furnishes it for the same purpose. Any other construction would defeat the plain intent of this statute, and place it in the power of evil-disposed persons to carry out their criminal intents with impunity by sending a drug, instrument, or other means of producing miscarriage through the mail or other channels of conveyance. Sending a drug by mail to Martha Marr, to be taken by her for this forbidden purpose, is so clearly an administering of it, within the meaning of the statute, as to require neither argument nor citation.

III. The defendant and Martha residing in different places during their intimacy, had considerable correspondence through the mail. The letters received by her were properly identified and introduced in evidence by the state. No notice was served upon the defendant to produce the letters received by him from Martha Marr. The defendant complains that the prosecutrix was permitted to testify over his objection to part of the contents of some of the letters written by her, upon the ground that the proper foundation had not been laid for admitting this secondary evidence. In ruling upon the objection the court said: "The objection is overruled, because the letter is in the possession of the defendant, and the defendant is present in court, by his counsel, and does not present the letter himself, and he cannot be required to produce it; hence the witness is permitted to state the contents." The defendant complains of this ruling and statement. Let it be conceded that the ruling was erroneous; yet it was clearly without prejudice to the

defendant.   The only evidence given as to the contents of any of the letters written to the defendant was the statement of Martha, "I wrote him that he could come and see me." This she said was in answer to a letter from him asking if he might visit her. There is no controversy but that he did, with her permission, visit her frequently, and therefore this statement as to the contents of her letter was without prejudice to the defendant.   Defendant also complains that Martha Marr was permitted, over his objection, to testify that certain letters, twenty in number, were received by her from him in reply to letters written by her to him, and that they were in his own handwriting. These letters were competent, as tending to show the relation of the parties, and there was no error in admitting this evidence of their identity.   A letter from defendant, marked "B," is especially objected to, because written some time after the drug had failed to produce a miscarriage.   This letter is identified as written by the defendant, and was written in pursuance of a promise to send to Martha Marr something that would cause miscarriage.   In the letter he says, "I wish you would give the writer a fair test."   What was meant by the word "writer" is not apparent, but Martha says it refers to a lead pencil furnished her to use to produce a miscarriage.   While it is true the charge is administering a drug, this evidence was competent to show the intent with which the defendant acted, and the fact that the letter was written after the attempt had failed does not render it less competent for that purpose.

IV.   The court, in the ninth instruction, used this language:   "Evidence has been admitted before you, both written and oral, as to declarations made by the defendant to the prosecuting witness, in which there is reference made to the use by the said prosecuting witness of a 'writer,' which was explained by the prosecuting witness as meaning a lead pencil which the prosecuting witness claims was given to her by the defendant with the instruction to use the same for the

purpose of producing a miscarriage of her child." The defendant insists that this was not a correct statement of the testimony, and was prejudicial. We think the statement is fully sustained by the testimony, and the application thereof was carefully guarded in what immediately follows in the same instruction. In this connection complaint is also made of certain statements of the county attorney in his opening statement and in argument to the jury. These, so far as they appear in the record, were fully warranted by the issues and the evidence, and afford no grounds for complaint.

V. Defendant insists that the court erred in refusing instruction 1 asked by the defendant, and argues that "it was defendant's right to have the attention of the jury called to the improbability of his intending to produce a miscarriage, when the drug administered in the quantity shown could not by any possibility have produced any effect whatever." There is evidence showing that a much larger quantity of ergot than that taken was necessary to produce miscarriage, but the production of a miscarriage is not essential to the crime charged. Defendant also complains of the refusal to give the second instruction asked, upon the ground that the prosecuting witness was a willing accomplice, and that the jury should have been told that her evidence was thereby to some extent discredited. The jury was sufficiently instructed as to rules for determining the credibility of witnesses, and the weight to be given to their testimony.

What we have said fully disposes of all the claims made in argument, and leads to the conclusion that the defendant had a fair and impartial trial, that the judgment of the district court is correct, and that it should be AFFIRMED.