COMMONWEALTH *vs.* ELIZABETH E. HARTFORD.

Suffolk.   November 19, 1906. — January 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Pleading, Criminal,* Indictment. *Evidence,* Competency, Admissions by conduct.

An indictment under R. L. c. 212, § 16, as amended by St. 1905, c. 316, charging the defendant with knowingly distributing and circulating a printed paper conveying notice of a place where directions, information and knowledge might be obtained for the purpose of causing and procuring the miscarriage of women pregnant with child, is sufficient under R. L. c. 218, §§ 17 and 29, if the crime is set forth in the words used in the statutes with a general averment that the defendant committed the act, and no further averment of a guilty knowledge of the contents of the paper is necessary.

At the trial of an indictment under R. L. c. 212, § 16, as amended by St. 1905, c. 316, for knowingly distributing and circulating a card conveying notice of a place where directions and information might be obtained for the purpose of causing or procuring the miscarriage of women pregnant with child, where it appears that the card described in the indictment was given by the defendant to a police officer in disguise in response to an inquiry by him as to treatment for a proposed patient, evidence is admissible describing the rooms where the inquiry was made and the card was given, of the presence there of envelopes addressed to physicians containing similar cards, and of statements made by the defendant to a sergeant of police who entered while the interview was in progress, that the officer to whom she had given the card was a friend of hers, giving a name and address as his, and that she got acquainted with him at a social party two months previous.

At the trial of an indictment under R. L. c. 212, § 16, as amended by St. 1905, c. 316, for knowingly distributing and circulating a card conveying notice of a

place where directions and information might be obtained for the purpose of causing or procuring the miscarriage of a woman pregnant with child, where it appears that the card described in the indictment was given by the defendant to a witness for the Commonwealth, who was a police officer in disguise, in response to an inquiry by him as to treatment for a proposed patient, the evidence of the delivery of the card is none the less admissible because it was procured by lying and deceit on the part of the witness, and it is a question for the jury whether the card was delivered voluntarily with a criminal purpose.

INDICTMENT, found and returned in the Superior Court for the county of Suffolk on June 9, 1906, charging that the defendant on May 9, 1906, at Boston, " did knowingly distribute and circulate a certain printed paper, notice, advertisement and reference then and there containing words and language giving and conveying notice, hint and reference to a certain place where advice, directions, information and knowledge might be obtained for the purpose of causing and procuring the miscarriage of women pregnant with child, which said printed paper, notice, advertisement and reference is of the tenor following, that is to say : " Here followed a copy of the printed paper referred to, which was a card put in evidence at the trial.

In the Superior Court the case was tried before *DeCourcy*, J. Before the empanelling of the jury, and before the trial of the case, the defendant filed and made two motions to quash the indictment, each of which was denied by the judge; and the defendant appealed.

At the trial the Commonwealth called as a witness one Mitchell, who testified that he was a police officer of the city of Boston, and that on May 9, 1906, in consequence of information and instructions received from his superior officer, he went to a room in a building on Tremont Street, in Boston, where he found the defendant seated at a desk, between two and three o'clock in the afternoon, and had a conversation with her. Against the objection and subject to the exception of the defendant, this witness was allowed to state the conversation, it appearing from his testimony that it was at the time and place of this conversation that the card above mentioned was given by the defendant to the witness. A part of this conversation was as follows :

" I asked if the doctor was in, and she said, ' No.' She says, ' What do you want ? ' I said, ' I want to see the doctor.' She says, ' What do you want to see him for ? ' I says, ' I don't

think I ought to tell you; it is about a female trouble.' ' Well,' she says, ' that is what I am here for.' So she came over to the desk and sat down, and I sat down in the chair along side of her, and she asked me what it was, and I told her. I says, ' I know a girl that is in trouble.' I says, ' I understand this is a place to have those things taken care of.' She says, ' How far along is the girl?' I says, ' Three months.' She says, ' That is a pretty delicate period for an operation.' She says, ' We have the best nurses at our hospital.' And she said, ' If we take this case we will guarantee satisfaction.' She says, ' It will cost you $100.' Then she asked if the girl was a healthy girl. I said, ' Yes.' She says, ' Where does she live?' I says, ' In Chelsea.' She says, ' You bring her here and I will take her to the hospital.' She says, ' First, I will have to find out whether we have room in the regular hospital, and if we haven't we take them some- times to a private hospital.' I says, ' Where is that hospital?' She says, ' It is up town, about twenty minutes' ride from the Boylston Street subway, on the electric cars.' Then I asked her if she had any cards, and she opened a drawer at the desk and she took out this card, and I saw several other cards of the same kind in there at the time. She passed me that one. She says, ' Now we are very careful whom we give those cards to.' ' Be- cause,' she says, ' you know there used to be some places like this in this building before, and if the inspectors knew it they would raid us.' She told me that they did intend to have a front room, but on account of the previous raids there they thought a back room would be better. She asked me then to have the girl at the office, or at the Boylston Street subway at one o'clock on the following day, and she would take her to the hospital."

The witness also testified to another conversation with the defendant on the next day at the same place. He testified that there were on the desk some envelopes addressed to physicians; and that the defendant said there were cards in these envelopes and that the only people she sent those cards to were physicians.

Against the objection and subject to the exception of the de- fendant the card which the defendant gave to the witness was introduced in evidence by the government.

The witness also testified that after further conversation with

the defendant, a sergeant of police came in with a squad of police officers. He then testified, " The sergeant asked her who I was, and she said I was a friend of hers. He asked her what my name was, and she said my name was Sidney Cole. He asked her where I lived, and she said that I lived out in Newton. He asked her where she got acquainted with me, and she told him at a social party, about two months previous. He asked her then what the envelopes were on the desk, and she said they were directed to doctors. He opened some of them while I was there, but he stood back to me and I couldn't tell what he took out of them."

On cross-examination the witness admitted that the essential parts of the statements and representations made by him in the conversations were untrue and were made for the purpose of getting information in regard to the business that was carried on in the place, and that he wanted to find out what the place was for, and did not care how many statements " he made which were untrue."

Asked in cross-examination with reference to the card above referred to, he testified as follows : " Q. That is the only card you got? A. That is the only one I got from her. — Q. And that is the only card that you saw her deliver to anybody? A. That is the only card that I saw her deliver. — Q. And you asked her for it? A. Yes, sir. — Q. And before you asked her for it you told her the condition of this alleged friend of yours? A. Yes, sir. — Q. And the statements you made up to the time you got the card you know weren't founded on facts, isn't that true? A. Yes. There was no facts. — Q. And you made this statement for the purpose of getting possession of the card, isn't that right? A. I told the story for to get what information I could. — Q. And to get possession of the card ? A. Anything, yes, anything that would be evidence."

At the close of the witness's testimony the defendant requested that the evidence of the card be stricken out and withdrawn from the consideration of the jury. The judge refused the request.

The sergeant of police, called as a witness by the Commonwealth, testified to some of the same facts, and, against the objection and exception of the defendant, was allowed to de-

scribe the room and its contents, and to testify to what articles he found in searching the premises with a search warrant. A police officer, who accompanied the sergeant, testified in regard to a number of envelopes addressed to physicians containing cards similar to the one delivered to the witness Mitchell, which he found in searching the desk.

At the close of the evidence the defendant asked for certain rulings which were refused by the judge, but these have become immaterial, because the exceptions to their refusal were not argued and therefore were treated by the court as waived.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*H. W. James*, for the defendant.

*M. J. Dwyer*, Assistant District Attorney, for the Commonwealth.

BRALEY, J. Because guilty knowledge of its contents is not specifically averred, and only the general allegation appears that she " knowingly " distributed a circular or advertisement, the defendant's first contention is that no criminal offence has been described, and the motions to quash should have been granted. *Commonwealth* v. *Boynton*, 12 Cush. 499. Compare *Rosen* v. *United States*, 161 U. S. 29; *Price* v. *United States*, 165 U. S. 311. But the indictment follows the language of R. L. c. 212, § 16, as amended by the St. of 1905, c. 316, as to the first of the offences created and defined, and under R. L. c. 218, §§ 17 and 29, the crime charged may be set forth in the words used in the statute, with a general averment that the defendant committed the act, which obviates any further technical description of an evil intent. *Commonwealth* v. *Hersey*, 2 Allen, 173, 180. *Commonwealth* v. *Lavery*, 188 Mass. 13, 16. If there was any uncertainty as to the particulars of the offence further information would have been furnished upon the defendant's motion if otherwise the charge had not been plainly and substantially stated. R. L. c. 218, § 39. *Commonwealth* v. *Kelley*, 184 Mass. 320. *Commonwealth* v. *McDonald*, 187 Mass. 581. This course was not taken, and the indictment being sufficient the motions were properly denied.

The defendant's further contention is that in substance the entire testimony introduced by the Commonwealth was incom-

petent.   While the acts made criminally punishable are distinct from the crime of procuring an abortion, evidence describing the rooms with their furnishings, the envelopes addressed to physicians containing similar cards, and the defendant's statements relating to the origin of her acquaintance with the officer to whom she had given the card described in the indictment, was properly admitted, not only as being descriptive either of the defendant's place of business, or of her employment, but also as indicative of her guilty knowledge of the contents of the card. *Commonwealth* v. *Devaney*, 182 Mass. 33, 36.   *Commonwealth* v. *Bond*, 188 Mass. 91, 93, 94.   It is true that mere possession of this card was not a crime, for the offence charged is its distribution or circulation as a paper conveying information where operations were performed for the purpose of procuring the miscarriage of pregnant women, but if intentionally handed to a patient who was seeking such treatment the offence would have been complete, and this equally would be true if the receiver was inquiring as to similar aid in behalf of a proposed patient.   The weight of the defendant's argument, therefore, is that because it was procured by false representations there was no proof either of distribution or of circulation.   Generally solicitation to commit a crime to which the party solicited yields, does not exonerate the wrongdoer, or exempt him from prosecution, and under the statute it is the circulation or distribution with guilty knowledge which is made unlawful, although patients may not be obtained.   The intention with which it is put out is the controlling element, and if the defendant issued the card as an advertisement containing the information sought this would be a violation of the statute.   If from a desire to obtain patronage she chose to rely upon the officer's statements rather than to require any corroboration before acting upon them such conduct would neither lessen her criminal responsibility, nor render his testimony incompetent if the jury were satisfied that it was delivered voluntarily with a criminal purpose, which was clearly and accurately explained in the instructions given.   *Commonwealth* v. *Dana*, 2 Met. 329.   *Commonwealth* v. *Coleman*, 157 Mass. 460, 461.   *Commonwealth* v. *Tibbetts*, 157 Mass. 519. *Commonwealth* v. *Tucker*, 189 Mass. 457, 468.   Foster's Crown Cases, 129.   *Regina* v. *Williams*, 1 C. & K. 195.

The requests for rulings not having been argued must be treated as waived, and no error of law appearing the order denying the motions to quash must be affirmed and the exceptions overruled.

*So ordered.*