COMMONWEALTH *vs.* JOHN SINCLAIR.

Suffolk. January 14, 1907. — April 1, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Constitutional Law*, Declaration of Rights, art. 12. *Pleading, Criminal*, Bill of particulars, Indictment. *Abortion. Evidence*, Hearsay in criminal cases, Opinion: experts, Admissions and confessions, Circumstantial, Best evidence, Presumptions and burden of proof. *Jury and Jurors. Practice, Criminal*, Reasonable doubt, Aiding and assisting.

The right of a defendant in a criminal case under R. L. c. 218, § 39, to a bill of particulars, where the indictment does not set out the charge fully, plainly, substantially and formally, is an absolute one, and the denial of a motion for such a bill of particulars cannot be justified on the ground that the defendant had been tried before on the same indictment and already was in possession of all the information which the government had in regard to the particulars for which he asked.

An indictment under R. L. c. 212, § 15, charging that the defendant with intent to procure the miscarriage of a woman named " did unlawfully use a certain instrument " upon her body, in consequence of which she died, does not set out the charge against the defendant with sufficient fulness to deprive him of the right to require a bill of particulars describing the instrument and the manner of its use if these were known to the grand jury.

At the trial of an indictment under R. L. c. 212, § 15, for unlawfully using an instrument upon the body of a woman with intent to procure her miscarriage, in consequence of which she died, the physicians who attended the woman after the alleged operation cannot be permitted, in connection with their opinion as to the cause from which she was suffering, to testify to her declarations, not dying declarations under R. L. c. 175, § 65, that she had been operated upon to get rid of her pregnancy and that this had been followed by a miscarriage.

At the trial of an indictment under R. L. c. 212, § 15, for unlawfully using an instrument upon the body of a woman with intent to procure her miscarriage, in consequence of which she died, witnesses qualified as medical experts, who attended and examined the woman after the alleged operation and before her death, may be allowed to testify to their opinion as to the kind of instrument and the mode of using it which would produce the condition they found to exist.

At the trial of an indictment under R. L. c. 212, § 15, for unlawfully using an instrument upon the body of a woman with intent to procure her miscarriage, in consequence of which she died, evidence that the defendant said to a witness that "he had a patient at the relief station who was very ill; that if anything happened it would be twenty years for him" is admissible, if there is other evidence from which the jury may find that the statement referred to the defendant's connection with the crime charged in the indictment.

At the trial of an indictment for a crime, evidence that after the discovery of the crime the defendant wished to borrow money for the purpose of going away may be admissible as an admission by conduct; and if the matter is not carried further by other evidence, so that the fact becomes immaterial, this does not make erroneous its admission at a time when subsequent evidence might have made it material.

At the trial of an indictment under R. L. c. 212, § 15, for unlawfully using an instrument upon the body of a woman with intent to procure her miscarriage, in consequence of which she died, evidence that the defendant said to a witness who found in the defendant's office a book with the name of the deceased woman written in it, when asked how the name came to be in the book, "I cannot tell you; I probably cast her horoscope at some time," and said that he did not remember the woman as he had so many of them come to his place of business, may be admissible in connection with other evidence to show that the defendant was attempting to conceal by false statements what he had to do with the deceased.

At the trial of an indictment under R. L. c. 212, § 15, for unlawfully using an instrument upon the body of a woman with intent to procure her miscarriage, in consequence of which she died, evidence may be admissible that in a small handbag which the woman carried with her when going away before and returning after the alleged time of the unlawful operation there was found after her death a slip of paper bearing the name of the defendant which he admitted at the trial to be in his own handwriting.

At the trial of an indictment under R. L. c. 212, § 15, for unlawfully using an instrument upon the body of a woman with intent to procure her miscarriage, in consequence of which she died, a witness for the Commonwealth testified that an account book kept by the defendant, containing the daily accounts of his office with names, was inspected by the witness in the defendant's office and that he saw in the book the name of the deceased woman in the defendant's handwriting. The book was not produced and no notice to produce it was given. The defendant denied having any such book. *Held*, that, in view of the defendant's denial of the existence of the book, secondary evidence was admissible to prove its contents without any notice to produce it.

In a criminal trial, where proper instructions as to the burden of proof are given, it is right for the presiding judge to refuse to rule that the presumption of innocence "is to be considered by the jury as a matter of evidence in the defendant's favor."

In a criminal trial, where proper instructions as to the burden of proof are given, it is right for the presiding judge to refuse to rule that, "if a reasonable doubt

of the defendant's guilt is entertained by one juror, then the defendant cannot be convicted." The doubt of one juror cannot influence properly the action of jurors who feel no doubt, further than follows from the rule of law, that it is the duty of the jurors to consider and weigh all the questions that arise on the evidence with due regard to each other's opinions and that conviction can be had only upon the agreement of all.

Under R. L. c. 212, § 15, which provides for the punishment of one who, with intent to procure the miscarriage of a woman, "unlawfully uses any instrument or other means whatever, or, with like intent, aids or assists therein," a person who is present aiding and assisting in an operation for the purpose of procuring a miscarriage while another person uses an instrument for that purpose may be convicted of the crime of unlawfully using the instrument on an indictment which does not charge him with aiding or assisting.

INDICTMENT, found and returned in the county of Suffolk on March 8, 1906, charging that the defendant " on the fourth day of February, in the year of our Lord one thousand nine hundred and six, at Boston, aforesaid, with intent to procure the miscarriage of one Annie M. Russell, did unlawfully use a certain instrument upon the body of said Russell, and in consequence thereof said Russell died."

Originally the indictment had consisted of two counts. At the first trial the Commonwealth with the consent of the defendant said that it would not prosecute further the first count of the indictment, and it was *nol prossed.* At that trial the jury disagreed.

Another jury was empanelled to try the case, but on motion of the defendant the issue of the defendant's guilt was withdrawn from the jury. The defendant renewed a motion for a bill of particulars and a motion to quash the indictment, both of which had been denied at his first trial, the defendant excepting. These motions again were denied, and the defendant again excepted to the orders denying the motions.

Another jury was empanelled and the defendant was tried before *Bond,* J. on the second count of the indictment, which is quoted above. The jury returned a verdict of guilty ; and the defendant alleged exceptions. The judge after sentence filed a certificate that in his opinion there was reasonable doubt whether the judgment should stand, and ordered that the execution of the sentence be stayed until further order of the court, and that the defendant recognize to the Commonwealth for his appearance to answer further to the indictment and to abide the final decree or order of the court.

. The evidence admitted by the judge against the exceptions of the defendant, which is referred to in the opinion, was as follows:

The witnesses Leen, Lyons and Packard, mentioned in the opinion, were qualified as medical experts, and testified to their attendance upon and examination of Annie M. Russell after the alleged operation and before her death. The substance of their testimony was that Russell died from blood poisoning, the beginning of which resulted from an instrument having been introduced into her womb, and the character of such an instrument as would have produced the condition testified to was described.

In regard to the declarations of Russell, Leen testified: " She said that on February 4th she was operated on; that on February 6th a mass came away from her front passage; that every day since then she had a chill; that she was sick to her stomach every day since February 6th, and vomited the day before. That was on February 10th." Lyons testified: " Miss Russell told me she had been pregnant about four months; that she had had an operation done to get rid of the pregnancy; that was done on the week previous, the 4th of February, and she miscarried later, and the following Tuesday she had chills, and had them every day after that."

The testimony of Mrs. Phillips referred to in the opinion was as follows: " Dr. Sinclair said he had a patient at the relief station who was very ill; that if anything happened it would be twenty years for him." She also testified that the defendant met her one day after the death of Russell and said, " Mrs. Phillips, can you loan me $2; I want to go to Lynn."

The witness Merchant was a newspaper reporter, and testified that after the death of Russell he visited the office of the defendant, where the defendant was; that he found there on a desk a book with the name " Annie Russell " written in it, and asked the defendant " How does this name come in this book?" To which the defendant answered " I can't tell you; I probably cast her horoscope at some time." The witness testified that he asked the defendant " Do you remember Annie Russell?" and the defendant replied " that he didn't; he had so many of them come to his place of business that he couldn't remember them."

The mother of Russell testified that, in a small handbag which her daughter carried when going away before and returning after the alleged time of the operation, she found after her daughter's death a slip of paper on which was written the defendant's name. The defendant in testifying admitted that the words "Doctor Sinclair" on this slip of paper were in his own handwriting.

A witness testified that the account book referred to in the opinion was kept by the defendant and contained the daily accounts of his office with names. The witness testified that the entries in the book were in the defendant's handwriting and that he saw the name of Annie Russell written in the book in the defendant's handwriting. The book was not produced and no notice to produce it was given. The defendant denied that he had such a book.

Among the rulings requested by the defendant which were refused by the judge were the following:

"2. It is a presumption of law that the defendant is innocent. This presumption is with the defendant at the outset of the trial and continues with him through all its stages until such evidence is introduced as to prove beyond all reasonable doubt that the defendant is guilty. This presumption is to be considered by the jury as a matter of evidence in the defendant's favor, to the benefit of which he is of right entitled."

"7. The jury must not consider the testimony of the witnesses Dr. Leen and Dr. Lyons as to certain statements made to them by the deceased Annie Russell, to the effect that she had had an operation, and a subsequent miscarriage, as tending to show that an instrument had been used upon her by the defendant with intent to procure her miscarriage.

"8. Statements made by the deceased Annie M. Russell to Drs. Leen and Lyons are not evidence of the facts stated by her to them.

"9. If the jury find that the opinions testified to by the witnesses Dr. Leen, Dr. Lyons and Dr. Packard, or either of them, were founded wholly or in part upon the belief that there was a tear or laceration of the cervix, or neck of the womb, of the deceased Annie M. Russell, and that such tear or laceration did not in fact exist, it is their duty to exclude such

opinions from their consideration in weighing the evidence in this case."

" 20. If a reasonable doubt of the defendant's guilt is entertained by one juror, then the defendant cannot be convicted.

" 21. A reasonable doubt is none the less a reasonable doubt because it does not arise in the minds of all the jurors."

*C. W. Rowley*, for the defendant.

*M. J. Dwyer*, Assistant District Attorney, for the Commonwealth.

SHELDON, J.    The motion to quash the indictment was rightly overruled.    The question arises only on the second count.    This charges, following closely the language of R. L. c. 212, § 15, that the defendant, " with intent to procure the miscarriage of one Annie M. Russell, did unlawfully use a certain instrument " upon her body.    It is in the form prescribed by R. L. c. 218, § 67. See the Schedule of Forms, under Abortion, No. 2.    The only specific objection suggested is that it contains neither a description of the instrument charged to have been used nor an averment that it was unknown to the grand jurors.    To this it is a sufficient answer to say that if the charge was not fully, plainly, substantially and formally set out, the prosecution was required at the request of the defendant to file a statement of such particulars as might be necessary to give him reasonable knowledge of the nature and grounds of the crime charged.    R. L. c. 218, § 39.    This answers all constitutional requirements, and fully protects the rights of the defendant.    *Commonwealth* v. *Snell,* 189 Mass. 12, 19, and cases there cited.

The defendant also moved for a bill of particulars under the statute last referred to, and this motion was denied.    This action of the judge cannot be justified on the ground that the defendant, having been tried twice before upon this charge, was already in possession of all the information that the prosecution had in reference to the particulars for which he asked.    His rights do not depend upon the question whether he is already in possession of the information for which he asks, but solely upon the question whether the charge would be otherwise fully, plainly, substantially and formally set out.    If the indictment alone is not sufficiently full to give to the defendant his constitutional rights, he is entitled to a bill of particulars as an absolute right.

*Commonwealth* v. *Snell,* 189 Mass. 12, 19. *Commonwealth* v. *Kelley,* 184 Mass. 320, 323, 324. Nor had the defendant waived his right; for he had made the same request before each of his previous trials. The furnishing of particulars in such a case is a matter of strict right, not within the discretion of the court as it formerly was. *Commonwealth* v. *Wood,* 4 Gray, 11. *Commonwealth* v. *Giles,* 1 Gray, 466, 469. It becomes necessary therefore to determine whether by this indictment the defendant was informed of the nature of the charge against him with sufficient particularity, or, in other words, whether the indictment would have been good before the passage of St. 1899, c. 409, in which case it will still be good under the provisions of R. L. c. 218, § 67.

The complaint is that the indictment did not state the nature, kind and description of the instrument which the defendant was charged with having used, or the way and manner in which he was charged with having used it. The old precedents of indictments contain averments of these matters, or excuse their absence by stating that they were unknown to the grand jury. *Commonwealth* v. *Thompson,* 159 Mass. 56. *Commonwealth* v. *Coy,* 157 Mass. 200, 214, 216. *Commonwealth* v. *Tibbetts,* 157 Mass. 519. *Commonwealth* v. *Follansbee,* 155 Mass. 274. *Commonwealth* v. *Corkin,* 136 Mass. 429. *Commonwealth* v. *Brown,* 121 Mass. 69. *Commonwealth* v. *Boynton,* 116 Mass. 343. *Commonwealth* v. *Snow,* 116 Mass. 47. *Commonwealth* v. *Jackson,* 15 Gray, 187. *Commonwealth* v. *Brown,* 14 Gray, 419. In *Commonwealth* v. *Wood,* 11 Gray, 85, the instrument was described only as "a certain metallic instrument"; but the indictment was not objected to on this ground. The gist of the offence charged is the use of an instrument with the specific intent stated; but the description of the instrument and the mode of its use are material to describe and identify the charge. It is true that an indictment for maliciously advising or procuring a woman to take any medicine with intent to procure her miscarriage need not allege what the medicine was or whether it was such as would tend to produce the effect intended. *Commonwealth* v. *Morrison,* 16 Gray, 224. Similar decisions have been made in other States. The question is whether the defendant administered or prescribed anything to the woman

with the criminal intent charged, and the name of the medicine need be neither averred nor proved. *Carter* v. *State*, 2 Ind. 617. *State* v. *Moothart*, 109 Iowa, 130. *State* v. *Crews*, 128 N. C. 581. *State* v. *Vawter*, 7 Blackf. 592. *State* v. *Van Houten*, 37 Mo. 357. *State* v. *Reed*, 45 Ark. 333. *Dougherty* v. *People*, 1 Col. 514. *Watson* v. *State*, 9 Tex. App. 237. *Cave* v. *State*, 33 Tex. Cr. R. 335. *Rex* v. *Phillips*, 3 Camp. 73. Bishop on Statutory Crimes, § 756. The administering or advising of drugs or the use of any instrument or other means with the prohibited intent are coupled together in our present statute (R. L. c. 212, § 15); and it is said to be difficult to see why greater strictness should be required in the one case than in the other. This has been intimated in some cases. But there is a manifest difference between the giving or advising of medicine for the purpose of procuring a miscarriage and the use of an instrument for the same purpose. The former perishes in the using; its name, its composition and its potency to bring about the effect intended are all immaterial. Not only is the latter capable of identification and description, but its character and the mode of its use ordinarily are the best evidence of the effect intended to be produced. Accordingly the name or description of the instrument and the manner of its use generally will be essential to a complete description of the offence charged. The grand jury was required to state the means used to bring about the abortion, with as much certainty as the nature of the evidence before them would warrant. *Commonwealth* v. *Noble*, 165 Mass. 13, 15, 16. This particularity of allegation will be *prima facie* of material service to the person indicted in enabling him to understand the charge and to prepare his defence. *Commonwealth* v. *Robertson*, 162 Mass. 90, 96. *Commonwealth* v. *Cody*, 165 Mass. 133. Such averments are necessary at common law, unless excused by an averment that the particulars are unknown to the grand jury. See beside the cases already cited, *State* v. *Quinn*, 2 Penn. (Del.) 339; *Smartt* v. *State*, 112 Tenn. 539; *State* v. *Smith*, 32 Maine, 369; *Howard* v. *People*, 185 Ill. 552; *Cochran* v. *People*, 175 Ill. 28.

Accordingly we are of opinion that the indictment did not set out the charge against the defendant with sufficient fulness to deprive him of the right to require a bill of particulars, and

that his motion for such a bill should have been allowed; and this right having been denied to him, he is entitled to a new trial.

We proceed to consider those questions which seem likely to be presented at another trial.

The prosecution was allowed, against the defendant's exception, to introduce evidence of the statements made by Annie M. Russell to the physicians who were attending her that she had been operated upon to get rid of her pregnancy, and that this had been followed by a miscarriage. These were not dying declarations,* and were not admitted as such. They were testified to by the physicians in connection with their opinion as to what she was suffering from when they visited her after the alleged operation, and as a part of the reasons of their opinions, together with the statements which she made to them as her symptoms, sensations and sufferings. It is the general rule that a party cannot prove incompetent facts under the guise of fortifying the opinions of his witness. *Peirson* v. *Boston Elevated Railway*, 191 Mass. 223, 233, 234. *Commonwealth* v. *Tucker*, 189 Mass. 457, 479. *Commonwealth* v. *Leach*, 156 Mass. 99, 101. *Hunt* v. *Boston*, 152 Mass. 168. But the statements to a physician of one's bodily ailments and symptoms, made for the purpose of enabling him to give proper medical advice and treatment by forming an opinion as to the cause of such ailments or symptoms, may be testified to by the physician in connection with testimony of the opinion which he formed partly upon such statements. *Barber* v. *Merriam*, 11 Allen, 322. *Fleming* v. *Springfield*, 154 Mass. 520. *Cronin* v. *Fitchburg & Leominster Street Railway*, 181 Mass. 202. And it is argued by the Commonwealth that the statements in question, under the circumstances of this case and considered with reference to the rest of the testimony, come within this rule. The contention is that her statement that she had been operated upon to produce a miscarriage was one of the facts upon which the physicians formed their opinion; that such an operation, with its attendant circumstances and consequences, well may be found to be one of the chief producing causes of subsequent suffering and

---

* See R. L. c. 175, § 65.

disease; and that the statement of it may be a summing up of the result of many physical causes and effects which scarcely could be stated by an unskilled woman. But this argument was fully considered in *Roosa* v. *Boston Loan Co.* 132 Mass. 439; and under the rule there laid down the exception to the admission of this evidence must be sustained.

The witnesses Leen, Lyons and Packard were sufficiently qualified as experts; and their testimony as to their opinions was competent. Their opinions as to the kind of instrument and the mode of using it which would produce the condition they found were properly admitted. *Commonwealth* v. *Lynes*, 142 Mass. 577. *Commonwealth* v. *Piper*, 120 Mass. 185, 189, 190. It did not appear when this testimony was admitted that there was any dispute as to the condition of Russell's womb; and the form of the question put to the witnesses was allowable.

The testimony of Mrs. Phillips was admitted rightly. The jury might find that the defendant in the statements to which she testified referred to his connection with this charge. *Commonwealth* v. *Hartford*, 193 Mass. 464. And evidence that he wished to borrow money for the purpose of going away might have some bearing upon his guilt or innocence. This last matter was not carried further, and so became immaterial; but we cannot say that it was incompetent when admitted. *Commonwealth* v. *Bond*, 188 Mass. 91.

Testimony of the defendant's statement to Merchant was competent. Viewed in connection with the rest of the evidence, it had some tendency to incriminate the defendant by showing that he was attempting to conceal by false statements what he had to do with Russell. And evidence that the slip of paper bearing the defendant's name was in her possession immediately before and after the alleged operation was competent under the circumstances of this case.

There was no error in the judge's admitting evidence of the account book alleged to have been kept by the defendant and to have contained the name of Annie Russell. He denied having any such book, and no notice to produce it was necessary. *Commonwealth* v. *Bishop*, 165 Mass. 148, 150, 151.

The requests for instructions as to the presumption of innocence and the doctrine of reasonable doubt were sufficiently

covered by what was said to the jury. The presumption of innocence is not a matter of evidence; and the doubt of one juror cannot properly influence the action of jurors who feel no doubt, further than follows from the fact that it is the duty of the jurors to consider and weigh all the questions that arise on the evidence with due regard to each other's opinions, and that conviction can be had only upon the agreement of all in that result. See the discussion in 4 Wigmore on Evidence, § 2511, and cases there cited; *State* v. *Kennedy*, 154 Mo. 268, 287, *et seq.*; *Morehead* v. *State*, 34 Ohio St. 212, 217; *Stevens* v. *Commonwealth*, 20 Ky. Law Rep. 48; *Commonwealth* v. *Costley*, 118 Mass. 1, 24; *Commonwealth* v. *Leach*, 160 Mass. 542, 546, 547, 551. The defendant had no ground of complaint; his rights were fully guarded.

The seventh and eighth requests are made immaterial by our decision that the statements of Russell referred to in them were not competent to be proved.

The judge ruled that the defendant could be convicted, even though it was not shown that he himself handled the instrument that was used, if he was present aiding and assisting in the operation for the purpose of procuring a miscarriage and any one else was using the instrument for that purpose. It is not denied that the ordinary rule is, as stated by the judge, that where several persons were present acting together and in concert for the purpose of committing a crime, one doing one part and the others doing some other parts towards the commission of the crime, each is responsible not only for what he did himself, but for what each of the others did for the accomplishment of the common purpose. *Commonwealth* v. *Knapp*, 9 Pick. 496, 513, 517. *Commonwealth* v. *Clune*, 162 Mass. 206, 214. Kerr on Homicide, § 108. But it is contended that under R. L. c. 212, § 15, the act of aiding or assisting in the use of an instrument or other means with the prohibited intent is made a different crime from the act of using the same instrument or other means. It is true that in statutory offences, where the plain intent of the statute is to inflict punishment only on the person actually committing the offence, others cannot be brought within its provisions as principals upon proof merely that they were aiders and abettors. Lord Mansfield, C. J. in *Rex* v. *Royce*,

4 Burr. 2073, 2076.   *Commonwealth* v. *Carter*, 94 Ky. 527, 528.
*Frey* v. *Commonwealth*, 83 Ky. 190.   But the plain intent of the
statute in question is to apply the same penalty to all partici-
pators in the offence; the language employed is apt for that
purpose; and the reference to those who aid or assist in the
crime, so far as it refers to persons who are present and partici-
pate in its commission by aiding or assisting therein, is merely in
affirmance of the rule of the common law.

We find nothing in any of the other exceptions which calls
for special mention.   None of them are tenable.

> *Order overruling motion to quash affirmed; exceptions
> sustained.*