COMMONWEALTH *vs.* JOHN J. DONOGHUE & another.

Worcester.   February 4, 1929. — February 28, 1929.

Present: PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Abortion. Pleading, Criminal,* Indictment. *Accessory. Evidence,* Presumptions and burden of proof; Competency; Opinion: expert. *Practice, Criminal,* Conduct of trial: argument to jury.

An indictment charged that a first defendant on a certain date and at a certain place, with intent to procure the miscarriage of a certain woman, "did unlawfully use a certain instrument" upon her body and in consequence thereof she died; and that a second defendant "before the said felony was committed did incite, procure, aid, counsel, hire or command the said . . . [first defendant] . . . the said felony to do and commit." The first defendant moved to quash the indictment on the ground that it "charged two offences, distinct in kind, . . . requiring distinct punishments, and that two defendants were named in said count." The motion was denied. *Held,* that the motion properly was denied: the indictment followed the form allowed by G. L. c. 277, § 79.

A question, asked of the medical examiner at the trial of the indictment above described, "Was the condition that you found disclosed on the autopsy consistent with an abortion having been performed on this girl?" did not call for the opinion of the medical examiner as to whether there had or had not been performed a criminal abortion, but was directed solely to the elicitation of the opinion of the medical examiner as to whether the conditions found were consistent with an abortion howsoever that result was induced, and an exception to its being asked was overruled.

The Commonwealth, on motion of the first defendant in the indictment above described, filed a bill of particulars stating that it contended that he as a principal with intent to procure the miscarriage of the woman "unlawfully used an instrument or other means upon her in consequence whereof she died. The indictment is drawn under provisions of G. L. c. 272, § 19. The Commonwealth is unable to specify the exact nature of the instrument or other means used by the [first] defendant." *Held*, that, while the indictment was deficient in not containing a description of the instrument and the manner of its use, the deficiency was cured by the bill of particulars.

At the trial of the indictment above described, there was evidence that, following a call of the first defendant upon the woman at her apartment in Worcester, a physician came to the apartment from Boston and performed an operation upon her with the use of a wire or a tube, that she stated to the first defendant that the operation was not going to be successful; that subsequently the first defendant called on her twice, on the second occasion being with her in her bedroom for an hour or more, when he delivered her of a foetus four or five months advanced; that when he came out the foetus was left on the floor torn and mangled; that when he left he took with him the foetus and other soiled articles in a doctor's bag which he had brought with him. The medical examiner testified that the woman's organs of pregnancy were lacerated, torn and bruised in a remarkable way and in a way which was consistent with the use of instruments. A motion by the first defendant that a verdict of not guilty be ordered as to him on the ground that there was no evidence that an instrument was used by him, nor evidence warranting the drawing of such an inference, was denied. The defendant was found guilty. *Held*, that

(1) The evidence warranted a finding that the first defendant used an instrument or other means on the woman's body and did so unlawfully with intent to procure a miscarriage, and that she died in consequence thereof;

(2) The motion properly was denied and the verdict of guilty was warranted.

At the trial above described, the first defendant excepted to a direction by the trial judge "that counsel must refrain from discussing the case of Commonwealth *v.* O'Neil that occurred in Greenfield in this Commonwealth." *Held*, that

(1) The order prohibited only a discussion of and argument upon the facts in the O'Neil case, and nowise restricted or interfered with a full statement by the counsel to the jury of his views concerning circumstantial evidence and the weight a jury should give to evidence of that character;

(2) The exception was overruled.

At the trial of the indictment above described, there was evidence that the second defendant was responsible for the pregnancy of the woman; that examinations by physicians in Worcester had disclosed no positive signs of pregnancy and that the woman's sister had discounted the possibility of trouble on April 26; that the second defendant, who had come to Worcester from Boston, then returned to Boston; that shortly

thereafter the woman consulted the first defendant and on May 1 and 2 an unknown man performed operations upon her, the first defendant's automobile standing at the curb opposite her apartment at the time of the operation on May 2; that, in response to a note from the woman stating her condition and asking for $100 "as soon as possible," the second defendant called on the woman on May 3, gave her $100, and refused to marry her; that that evening the first defendant called, and, the next morning, removed the foetus in the circumstances above described. The second defendant moved that a verdict of not guilty be ordered as to him. The motion was denied and he was found guilty as an accessory before the fact. *Held*, that

(1) Findings were warranted that the second defendant, having reason to believe the operation performed by the unknown person was not likely to be successful, counselled and advised with the woman as to the course she should pursue in her condition, and gave her the $100, not by way of reimbursement of money already expended, but to hire indifferently an unnamed person to complete and bring to a successful issue the abortion which the unknown person had failed to bring about;

(2) If such facts were found, the hiring of the first defendant would be a hiring by the defendant and he, within the statute, would be an accessory before the fact;

(3) The motion properly was denied, and the verdict of guilty was warranted.

INDICTMENT, found and returned on May 14, 1928, and described in the opinion.

Proceedings in the Superior Court are described in the opinion. The indictment was tried before *Dillon*, J., and verdicts of guilty were returned.

The defendants appealed and assigned the errors described in the opinion.

*L. E. Stockwell*, for the defendant Tillson.

*F. W. Cronin*, for the defendant Donoghue, submitted a brief.

*C. B. Rugg*, District Attorney, for the Commonwealth.

PIERCE, J. This indictment was returned into court on May 14, 1928. On May 15, 1928, the defendant John J. Donoghue pleaded not guilty to all counts, and on May 17, 1928, Saxby Tillson pleaded not guilty to all counts of said indictment. The indictment in four counts charged the commission of the crime of abortion on Theresa H. Callahan, in consequence whereof she died, and the crime of accessory before and after the fact to the principal offence.

The first count charged the commission of the principal

offence on May 1, 1928, by John Doe, whose other and true name and more particular description of whom is to the said jurors unknown; and the commission of the crime of accessory before the fact to abortion by the defendants John J. Donoghue and Saxby Tillson. The second count charged the commission of the principal offence on May 1, 1928, by John Doe, whose other and true name and more particular description of whom is to the said jurors unknown; and the crime of accessory after the fact to abortion by the defendants John J. Donoghue and Saxby Tillson. The third count reads as follows: "And the Jurors, aforesaid, on their oath aforesaid, do further present, that said John J. Donoghue on the fourth day of May in the year of our Lord one thousand nine hundred and twenty-eight, at said Worcester with intent to procure the miscarriage of Theresa H. Callahan, did unlawfully use a certain instrument upon the body of said Theresa H. Callahan and in consequence thereof said Theresa H. Callahan died. That Saxby Tillson, before the said felony was committed did incite, procure, aid, counsel, hire or command the said John J. Donoghue the said felony to do and commit." The fourth count charged the commission of the principal offence of abortion by the defendant John J. Donoghue, and the commission of the crime of accessory after the fact to abortion by the defendant Saxby Tillson.

On October 29, 1928, the district attorney for the Middle District moved for, and the judge granted, leave to nol pros count four as against the said John J. Donoghue and Saxby Tillson. On the same day it was ordered that the trial of John J. Donoghue and Saxby Tillson be had under the provisions of St. 1925, c. 279, as amended. The defendants, through their respective counsel, filed motions to quash said indictment, and the motions were denied. The defendant John J. Donoghue then filed a motion for a bill of particulars, and on the same day a bill of particulars was filed by the Commonwealth. Thereupon a jury was empanelled and sworn to try the issues against the two defendants. The defendant John J. Donoghue filed a motion for a directed verdict on counts one and two, on opening of the district

attorney. This motion was denied. The motion filed by the defendant Saxby Tillson for a directed verdict on all counts on opening of the district attorney was also denied. On October 30, 1928, at the conclusion of the evidence, the defendant Donoghue filed a motion for a directed verdict on counts one, two and three which motion was denied; and on the same day the defendant Tillson filed a motion for a directed verdict on count three; this motion was denied on October 31, 1928. "Whereupon, said jury, after hearing all matters and things concerning the issues here depending, on the thirty-first day of said October, return their verdicts therein as ordered by the court, and on their oath say that the said John J. Donoghue and Saxby Tillson are not guilty on counts 1 and 2 of said indictment and on the first day of November in said year, return their verdicts therein and on their oath say that the said John J. Donoghue and Saxby Tillson are guilty on Count 3 of said indictment." On November 1, 1928, the defendant Donoghue filed a motion to arrest judgment; this motion was denied.

On November 5, 1928, the defendants were sentenced to imprisonment, and on the same day stays of execution of sentences were granted by the judge on motions of the defendants. On said day the defendants filed claims of appeal and gave notice thereof to the district attorney. On December 27, the defendant Tillson filed an assignment of errors, as ground for his claim of appeal, and on December 31 an assignment of errors was filed by the defendant Donoghue.

At the hearing on the appeal before us the defendant Tillson waived all exceptions except the one taken to the denial of his motion for a directed verdict on count three of said indictment, and the defendant Donoghue waived his exception to the refusal to quash the indictment except as it pertains solely to count three of the indictment. He further waived his second exception, to the denial of his motion to direct a verdict in his favor on counts one and two, upon the district attorney's opening, and his fourth and fifth exceptions, taken to the admission of certain testimony offered by the Commonwealth.

There was no error in the denial of the defendant Dono-

ghue's motion to quash the third count of the indictment for the reason, as contended by the defendant, that this count "charged two offences, distinct in kind, . . . requiring distinct punishments, and that two defendants were named in said count." The indictment follows the form allowed by G. L. c. 277, § 79. It describes the principal felony, G. L. c. 272, § 19, and the crime of accessory before the fact, G. L. c. 274, § 2, in accordance with the form allowed by G. L. c. 277, § 79. The contention that under said count "the defendant was tried and convicted as principal, on a count which charged an accessory before the fact" is unsound. The count admittedly charges the secondary crime, and is a plain and concise description of the principal offence to which the offender in the first degree can be held to answer. It was said by Lord, J., in *Pettes* v. *Commonwealth,* 126 Mass. 242, at page 245. "It is the practice to charge in the same count two defendants, who are both principals in the same felony, although one may be a principal in the first degree, as having actually committed the offence, the other as principal in the second degree by reason of being an accessory before the fact." *Commonwealth* v. *Cohen,* 120 Mass. 198. *Commonwealth* v. *Merrick,* 255 Mass. 510, relied on by the defendant, is not inconsistent with the quoted statement in relation to criminal procedure.

The defendant John J. Donoghue presents for our consideration his third exception, which was taken to the admission of the question put to the medical examiner, "Was the condition that you found disclosed on the autopsy consistent with an abortion having been performed on this girl?" and contends that "the words used in this case meant . . . a criminal abortion." There was no error in permitting the question and in receiving the answer thereto. The question did not call for the opinion of the medical examiner as to whether there had or had not been performed a criminal abortion, but was directed solely to the elicitation of the opinion of the medical examiner as to whether the conditions found were consistent with an abortion howsoever that result was induced. *Commonwealth* v. *Thompson,* 159 Mass. 56, 58. *Commonwealth* v. *Wagner,* 231 Mass. 265. *Com-*

*monwealth* v. *Cantor,* 253 Mass. 509. *Commonwealth* v. *Leger,* 264 Mass. 217.

The defendant Donoghue's next assignment of error is based upon his exception to the denial of his motion to direct a verdict on count three of the indictment. The judge told the defendant that he was "going to deny the motion" but would hear him. The specific ground upon which this claim of error is based is that the defendant's counsel intended to bring to the attention of the court (1) "That count 3 stated the use of a certain instrument"; (2) "That said count did not state a certain instrument to the grand jurors unknown, as required by law"; (3) "That said count did not contain the words, 'or other means whatever'"; and (4) "That count 3 of the indictment was defective." The description of the instrument and the manner of its use was material to a complete description of the offence charged, and its absence was not excused by an averment that the description was to the grand jury unknown. *Commonwealth* v. *Sinclair,* 195 Mass. 100. This material deficiency in count three was cured by the bill of particulars, wherein the Commonwealth in answer to the third request of the defendant replied ". . . the Commonwealth contends that the defendant, Donoghue, as a principal with intent to procure the miscarriage of Theresa Callahan on May 4, 1928, as distinguished from May 1, 1928, alleged in the first two counts of the indictment, unlawfully used an instrument or other means upon her in consequence whereof she died. The indictment is drawn under provisions of G. L. c. 272, § 19. The Commonwealth is unable to specify the exact nature of the instrument or other means used by the defendant, Donoghue." G. L. c. 277, § 40. *Commonwealth* v. *Snell,* 189 Mass. 12, 19. *Commonwealth* v. *Sinclair, supra.* In support of the motion the defendant argues "that there was no evidence in the case that an instrument was used by the defendant on May 4, 1928, nor was there any evidence from which a reasonable inference could be drawn, that an instrument was used by the defendant."

The evidence offered by the Commonwealth in support of its contention that the defendant Donoghue did use an in-

strument, or other means, on the body of Theresa H. Callahan, and did do it with intent to procure her miscarriage is entirely circumstantial. The facts which the jury warrantably could have found established beyond a reasonable doubt are that, about a week before May 4, 1928, Theresa H. Callahan called on the defendant Donoghue inquiring about her condition; that on May 1, the defendant came to the apartment occupied by Theresa H. Callahan and Catherine Callahan and talked with Theresa; that shortly thereafter another man, a doctor from Boston, came to the apartment and stayed with Theresa in her bedroom for a short while; that on Wednesday morning, May 2, Theresa called Donoghue on the telephone and told him that she was in a terrible dilemma and that the operation was not going to be successful; that within a half hour the unknown man came to the house and Donoghue's car was parked across the street; that on May 3, Theresa had a conversation with the defendant Tillson during which she said to him, "'I have had a doctor from Boston, I don't know who he is, all I can tell you is a description of him, I can't find out who he is. I don't have any way of knowing any more about him, or anything like that' . . . [he] said, 'What did he do?' She said, 'He has operated on me twice', and she said, 'I never felt so utterly low in my life as when he laid me out on an ironing table and inserted a tube or wire into my vagina.'"; that Donoghue came to the apartment on Thursday evening, between ten and ten-thirty o'clock, and was in the bedroom with Theresa a short time; that he came again on Friday morning around eleven o'clock; that he went in to the bedroom with Theresa, and was there for an hour or more, and while there he delivered Theresa H. Callahan of a fœtus four or five months advanced; that when he came out the fœtus was left on the floor torn and mangled; that when he left he took with him the fœtus and other soiled articles in a doctor's bag which he had brought with him. The above facts, in connection with the testimony of the medical examiner, if believed, to the effect that the organs of pregnancy were lacerated, torn and bruised in a remarkable way and in a way which was consistent with the use of instruments,

required submission to the jury of the issue of fact presented by the third count, and warranted the jury in finding as a reasonable inference therefrom that the defendant Donoghue did use an instrument or other means on the body of Theresa H. Callahan, did do it unlawfully with intent to produce a miscarriage, and that Theresa H. Callahan died in consequence thereof.

The remaining assignment of error is based upon the defendant Donoghue's seventh exception, which was taken to the "direction of the court that counsel must refrain from discussing the case of Commonwealth *v.* O'Neil that occurred in Greenfield in this Commonwealth." The order of the court prohibited only a discussion of and argument upon the facts in the O'Neil case, it nowise restricted or interfered with a full statement by the counsel to the jury of his views concerning circumstantial evidence and the weight a jury should give to evidence of that character. *Commonwealth* v. *Anderson*, 245 Mass. 177, 186.

The sole issue now presented by the defendant Tillson is, Did the trial judge commit error in denying his motion for a directed verdict on the third count of the indictment? To find the defendant guilty of being an accessory before the fact, the Commonwealth must prove beyond a reasonable doubt that he incited, procured, aided, counselled, hired or commanded the defendant Donoghue to commit an abortion upon Theresa H. Callahan. G. L. c. 274, § 2. The evidence at the trial warranted the finding by the jury of the facts which follow as proved beyond a reasonable doubt. In December, 1927, the defendant Tillson came to Worcester, and there met Theresa H. Callahan, and she did stenographic work for him in connection with his real estate business. During the month of January, 1928, Tillson frequently met Theresa H. Callahan and on an average of once a week was her guest at her apartment. During the latter part of January, 1928, Theresa H. Callahan informed him she was suspicious she might be in a family way. Between that time and April 27, whenever Tillson came to Worcester to visit Theresa, their talk was to the effect that such could not be the real situation. Before April 27, 1928, Theresa, becoming

more suspicious, consulted in March and April three doctors in Worcester, who made examinations with negative results. On Thursday, April 26, Tillson came from Boston and called on Theresa at her home. Because of the report of Dr. Phillip Cook on April 25, that there were no positive signs of pregnancy, Catherine Callahan, the sister of Theresa, discounted the possibility of trouble, and Tillson on April 26 returned to Boston. Some time after April 25, Theresa Callahan went to the home of the defendant Donoghue about seven o'clock in the evening. She sought advice from him as to her condition and general information relative to the subject of pregnancy. On Tuesday, May 1, 1928, Theresa left home at the usual hour but returned about ten o'clock in the forenoon. Soon after her return the defendant Donoghue came; he did not remain long. Shortly after he left, another man, identified and designated as the John Doe named in the indictment, came to the apartment and, as Theresa H. Callahan later told the defendant Tillson, performed an operation upon her. On Wednesday, May 2, 1928, Theresa H. Callahan called the defendant Donoghue on the telephone. Directly after that telephone conversation, the same man, John Doe, who had performed the operation on Tuesday, came again to the apartment and again performed an abortion upon Theresa H. Callahan. While the operation was in progress Catherine Callahan observed the Donoghue automobile standing on the curb opposite their apartment.

On Thursday evening, May 3, 1928, the defendant Tillson called at the apartment between seven and eight o'clock in response to a note he had received in Boston from Theresa H. Callahan, which reads: "I have received word from my doctor I am pregnant; my worst fears are realized. I am leaving the hotel and am going home, and I wish you would send me $100 as soon as possible." Tillson found Theresa H. Callahan and Catherine Callahan in a highly nervous and excited state. They told him of the happenings during the week, and Theresa expressed doubts that the operation would be successful. She related that she was later to call on Dr. Donoghue for subsequent treatment. Tillson gave

her a $100 bill.   After a general discussion Catherine asked Tillson to marry her sister.   He replied that he would not. Catherine then offered to give him $5,000 if he would do so. Tillson refused to act and returned to Boston that night.

On Thursday evening, after Tillson had left, Donoghue came and examined Theresa.   On Friday he came in the forenoon, was in the bedroom with Theresa for a substantial time, and finally left the room with a portion of the fœtus, as is more fully described, *supra*, in the statement of the case against John J. Donoghue.

On the above facts it is plain the jury, by inference, could reasonably find that the defendant Tillson was responsible for the condition of Theresa H. Callahan; and they could further find, by fair and reasonable inference, that Tillson, having reason to believe the operation performed by John Doe was not likely to be successful, counselled and advised with Theresa H. Callahan as to the course she should pursue in her condition, and gave her the $100, not by way of reimbursement of money already expended, but to hire indifferently an unnamed person to complete and bring to a successful issue the abortion which John Doe had failed to bring about. *Commonwealth* v. *Smith*, 213 Mass. 563.   If the jury found that the money was given to hire indifferently a person not named, and Theresa H. Callahan hired Donoghue in pursuance of the advice of the defendant, the hiring of Donoghue would be a hiring by the defendant and he, within the statute, would be an accessory before the fact.

As against each defendant the entry must be judgment affirmed.

*So ordered.*